**Arthur and Bonnie BROWN, as Parents of Harley D. Brown, Deceased, Plaintiff,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 95–6451 V.

United States Court of Federal Claims.

Aug. 28, 1996.

Arthur Brown and Bonnie Brown, Greenwood, Indiana, pro se.

David L. Terzian, with whom were Frank W. Hunger, Assistant Attorney General, Helene M. Golberg, Director, Torts Branch and John Lodge Euler, Deputy Director, Torts Branch, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is an action brought pursuant to the National Vaccine Injury Compensation Act ("Vaccine Act" or "Act"), 42 U.S.C. §§ 300aa–1 *et. seq.* (1991 & Supp.1995).[1] Petition was brought by the parents of Harley D. Brown, deceased and Ashlee R. Brown, a minor. Special Master French ordered the petition severed into separate claims, one on behalf of Harley and one on behalf of Ashlee. The Special Master ruled that petitioners had timely filed their claim for compensation based on Ashlee's injuries, but their petition based on Harley's death was dismissed as untimely. The matter is before the court for review of the order of the Special Master dismissing Harley's petition.[2]

## BACKGROUND

On May 7, 1991, petitioner Bonnie Brown, took two month old Harley and two year old Ashlee to Minot Air Force Base Hospital for each child's "well-baby" examination. As part of the examination, base hospital personnel administered a diphtheria-pertussis-tetanus vaccine, a hemophilus influenza type b vaccine, and an oral polio vaccine to each child.

Later that same day, Harley experienced an elevated temperature and redness and swelling around the inoculated area. As the day went on, Harley's condition worsened. He was trembling and suffering from leg spasms, severe cramping, and prolonged bouts of screaming. Mrs. Brown contacted the emergency room of the base hospital for care instructions and was told that warm baths and massages would relieve Harley's suffering. After three hours of continual screaming, Harley exhausted himself to sleep. From May 7, 1991, to May 16, 1991, Harley continued to endure prolonged periods of screaming and cramping, and was able to rest only after becoming completely exhausted. As instructed by base hospital personnel, the Browns continued to give him warm baths and massages. On May 17, 1991, petitioner Arthur Brown discovered that Harley had died at some point during his morning nap. A subsequent autopsy concluded that Harley died of Sudden Infant Death Syndrome.

Petitioners allege they became aware in August, 1992, that Federal law required medical facilities to maintain records of vaccination information for each individual patient, including the name of the vaccine manufacturer and the particular lot number of the vaccine administered. They believed that this information was a necessary prerequisite to a suit in this court under the Vaccine Act. On August 21, 1991, Mrs. Brown contacted the immunization department of the base hospital and requested the names of the manufacturers and the lot numbers of the vaccines that had been administered to her children. The hospital responded that it had no records of the requested information.[3]

On February 7, 1993, the petitioners filed an administrative claim on behalf of Ashlee and Harley under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 2675(a) (1988), against the United States Air Force ("Air Force"). Petitioners based this suit on the assertion that the base hospital's failure to maintain the proper records was actionable negligence. On March 18, 1993, per the Air Force's request, petitioners filed separate FTCA claims on behalf of Ashlee and Harley. On May 27, 1993, petitioners received a letter from Sherri W. Johnson, Chief of the Medical Law Branch of the Air Force's Tort Claims and Litigation Division, denying their claims. Johnson concluded that petitioners had failed to establish that the appropriate standard of care was not met by hospital employees in the administration of the vaccines. The let-

---

1. Subsequent references will be to the appropriate subsection of 42 U.S.C. § 300aa.

2. The Special Master's disposition of Ashlee Brown's petition is not at issue in this case.

3. Air Force regulations did not require the base hospital to record the manufacturer and vaccine lot numbers for the type of vaccines administered to Ashlee and Harley.

ter also informed petitioners of their right to file a petition in this court under the Vaccine Act:

> We regret that the proper documentation was not maintained; however, that does not preclude your client from filing for compensation under the National Vaccine Program, 42 U.S.C. 300aa–1 through –25. As Capt. Dillow informed your client on February 2, 1993, a petition for compensation under the statute for a vaccine-related injury must be filed no later than 36 months after the date of the occurrence of the first symptom or manifestation of the injury. Under 42 U.S.C. 300aa–16 a petition for compensation under the statute for a vaccine related death must be filed no later than 24 months from the date of the death.

This letter, dated May 27, 1993, was sent more than two years after Harley's death on May 17, 1991. Additional language in the concluding paragraph of this letter instructed petitioners to file suit on their FTCA claims in the appropriate district court not later than six months after the date of the mailing of the letter.

On August 4, 1993, petitioners filed a complaint under the FTCA in the United States District Court for the Southern District of Indiana. Counts I–III of their complaint alleged that the Air Force precluded the Browns from pursuing claims under the Vaccine Act due to the base hospital's failure to record the manufacturer and lot numbers of the vaccines administered to Harley and Ashlee. Counts IV–VI sought compensation for the alleged vaccine related injuries suffered by Harley and Ashlee. On September 15, 1994, the district court dismissed the first three counts for failure to state a claim. The court held that the Vaccine Act does not require evidence of the vaccine manufacturer or lot number as an element in bringing an action, and, therefore, the Government's actions had no prejudicial effect. The court further held that Counts IV–VI sought relief

under the Vaccine Act and that it therefore lacked jurisdiction, pursuant to Section 11(a)(2)(B) of the Act. The court also held that the date suit was filed in district court would be deemed the filing date for statute of limitations purposes in a subsequent Vaccine Act petition, should the Brown's elect to bring one.[4] On June 29, 1995, in an unpublished order, the United States Court of Appeals for the Seventh Circuit affirmed the district court's decision.

On September 26, 1995, petitioners filed the present action. They repeat the assertion that the Air Force precluded them from pursuing claims under the Vaccine Act due to the base hospital's failure to record the manufacturer and lot numbers of the vaccines administered to Harley and Ashlee. In addition, petitioners claim that Harley's death was a result of his May 7, 1991 vaccination. On April 10, 1995, the Special Master dismissed the claim regarding Harley's death. The Special Master pointed out that the deemed filing date of this action was more than two years after Harley's death. On the face of it then, the action was untimely under the two-year limitation period of Section 16(a)(3). That section provides that, for "a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 24 months from the date of the death ..." 42 U.S.C. § 300aa–16(a)(3).

The Special Master rejected petitioners' reliance on Section 11(a)(2)(B) as a basis for tolling the limitations period. That section provides:

> If an action which is barred under subparagraph (A) is filed in State or Federal court, the court shall dismiss the action. If a petition is filed under this section with respect to the injury or death for which such civil action was brought, the date

---

4. In its opinion, the district court concluded that:
   Although fairness concerns cannot confer subject matter jurisdiction on this Court, they may warrant equitable tolling of the statute of limitations by the Court of Federal Claims should the Browns chose to file a Vaccine Act

petition in that court. Of course, since that matter is not before this Court, we express no opinion as to its merits.
*Arthur and Bonnie Brown v. Secretary of DHHS,* 874 F.Supp. 238, 241 n. 4 (S.D.Ind.1994).

such dismissed action was filed shall, for the purposes of the limitations of actions prescribed by section 300aa–16 of this title, be considered the date the petition was filed if the petition was filed within one year of the date of the dismissal of the civil action.

42 U.S.C. § 300aa–11(a)(2)(B). This section is thus, in part, a tolling provision. It permits a claim to be brought more than two years after death, so long as an action was timely initiated during the limitations period, but in the wrong court. The action here must then be brought within one year of dismissal of the misfiled action. In this case the Special Master held that the action was brought in this court within the one year period,[5] but that the misfiled action was not commenced within two years after death. She held that the savings provision of Section 11(a)(2)(B) is triggered only by filing a suit in a state or federal court. In this case, she ruled, the district court action was brought too late to preserve a claim on behalf of Harley.

On May 10, 1996, petitioners filed a motion to review the Special Master's decision with this court. Petitioners allege that their filing of the FTCA administrative claim should be deemed the point at which this action was initiated, and hence, that the action is timely.

### DISCUSSION

This court is only authorized to set aside decisions of a Special Master if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. § 300aa–12(e)(2)(B). Whether this action is timely involves a question of law, which is reviewed *de novo*.

■ The issue presented here is a novel one: Whether the filing of an FTCA administrative claim with the agency constitutes the relevant date for application of the saving provisions of Section 11(a)(2)(B)? As petitioners recognize, the district court filing date does not assist them. That action was commenced on August 4, 1993, more than two years after Harley's death.[6] Alternatively, the *pro se* motion for review can be construed as a contention that the time for filing a claim under the Vaccine Act was equitably tolled until May, 1996. Petitioners argue that under either theory, the action should not have been dismissed. While the court is sympathetic to the petitioners' loss, it cannot agree that the law permits the suit.

Congress has incorporated certain equitable tolling principles into the Vaccine Act. Section 11(a)(2)(B) permits an action to be brought more than two years after death if a misfiled "civil action" was commenced in "State or Federal Court." In the present case, therefore, the petition to this court is timely only if, among other things, the filing of the FTCA administrative claim with the Air Force constitutes the contemplated civil action filed in state or federal court. The court agrees with the Special Master that the relevant words leave little room for confusion or amplification. Although the filing of an administrative claim is a prerequisite to bringing a tort action against the Federal Government in district court, *see* 28 U.S.C. § 2676 (1994), the reverse is not true. The two events are distinct. A claimant can get full relief at the agency and is only compelled to go to court if unsuccessful at that level. *See* 28 U.S.C. § 2672 (1994). Further, the court closely reviewed the entire legislative history of the Vaccine Act to determine if there is any suggestion that Congress viewed the filing of an administrative claim with an agency as the relevant triggering event under the savings provision of Section 11(a)(2)(B). No such suggestion appears, however.

Moreover, the meaning of the phrase "civil action" is well established at this point. Rule 2 of the Federal Rules of Civil Procedure provides that there shall be "one form of action[,] to be known as 'civil action.'" In Rule 3, it is established that a "civil action is

---

5. The Special Master held that the Seventh Circuit's affirmance of the district court dismissal constituted the relevant "dismissal" within the meaning of the statute.

6. Petitioners filed their FTCA claim with the Air Force on February 7, 1993. This is the only filing made by petitioners, in any forum, that was within the two year limitation period specified by section 16(a)(3).

commenced by filing a complaint with the court." Congress' presumed knowledge of these rules, as well as of the procedures under the FTCA, suggests that Congress intentionally used the filing of a complaint as the relevant marker. It follows that the complaint here cannot be viewed as timely under a literal reading of the Vaccine Act. For Section 11(a)(2)(B) to apply, a petitioner must have filed a timely complaint before a Federal or State court. An administrative filing will not suffice. Petitioners' only hope to establish timeliness is under more general equitable tolling principles.

*Equitable Tolling*

■■■ The doctrine of equitable tolling permits a party, under certain circumstances, to continue with its action even though the statute of limitations has been exceeded. *Lombardo v. Secretary of HHS*, 34 Fed.Cl. 21, 23 (1995); *Stevens v. Secretary of DHHS*, 31 Fed.Cl. 12, 23 (1994). In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court concluded that the doctrine of equitable tolling is applicable to suits against the Federal Government. *Id.* at 95–96, 111 S.Ct. at 457–58. Although subsequent decisions indicate that equitable tolling is not applicable to statutes of repose as opposed to statutes of limitation,[7] the court is persuaded that, unlike the "pre-Act" vaccine cases, the limitations period for post-Act cases is not one of repose.[8] Consequently, there is no principled objection to the possible application of tolling principles here.

■■■ The Court in *Irwin* held that equitable tolling applies "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96, 111 S.Ct. at 454 (footnotes omitted). The Court went on to caution, however, that "Congress, of course, may provide otherwise if it wishes to do so." *Id.* The court concludes for the reasons which follow that neither of the circumstances identified in *Irwin* are applicable here, and that Congress has "provided otherwise" in the present case.

The determination of whether the facts of a particular case justify the application of equitable tolling is made on a case-by-case basis. *Raspberry v. Secretary of DHHS*, 32 Fed.Cl. 777, 782 (1995) (citing *Scholar v. Pacific Bell*, 963 F.2d 264 (9th Cir.), *cert. denied*, 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992)). As they do in connection with the explicit saving provision of Section 11(a)(2)(B), petitioners assert that their filing of an administrative claim within the limitations period and their subsequent prompt initiation of this suit at the conclusion of the FTCA proceeding demonstrates that they "actively pursued [their] judicial remedies." *See Irwin*, 498 U.S. at 96, 111 S.Ct. at 457–58.

The net effect of applying equitable tolling to an untimely pleading such as that described in *Irwin* is to allow the same com-

---

7. As this court has previously stated in ruling on the equitable tolling of Section 16(a)(1): "Where the purpose of a statute of limitations 'is clearly to serve as a cutoff ... tolling principles do not apply.' " *Smith v. Secretary of DHHS*, 26 Cl.Ct. 116, 119, *aff'd*, 983 F.2d 1088 (Fed.Cir.1992) (table) (citations omitted); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (holding that the three year limitation under Section 10(b) of the Securities Exchange Act was inconsistent with tolling).

8. A statute of repose is measured from an arbitrary event which does not relate to the date of injury, whereas, a true statute of limitation begins to run from the time the cause of action accrues. *See, e.g., Lombardo v. Secretary of HHS*, 34 Fed.Cl. 21 (1995); *Smith v. Secretary of DHHS*, 26 Cl.Ct. 116 (1992); *Massard v. Secre-*

*tary of DHHS*, 25 Cl.Ct. 421 (1992); *see also Weddel v. Secretary of DHHS*, 34 Fed.Cl. 462 (1995).

Section 16(a)(3) resembles a statute of limitation rather than a statute of repose. It provides, in relevant part, that if a death occurs as a result of the administration of a vaccine, no petition may be filed for compensation under the program for such injury "after the expiration of 24 months *from the date of the death* ..." (emphasis added). Thus, the limitation period begins to run from a cause of action (i.e. "from the date of the death").

Section 16(A)(1), however, which deals with pre-Vaccine Act cases that "must be filed no later than 28 months after October 1, 1988," is a statute of repose. This is because the limitations period runs from an arbitrary date.

plaint that was timely filed with the wrong court to be filed untimely with the proper court. This application of the principle does no more, of course, than the Vaccine Act's own tolling provision, Section 11(a)(2)(B). In this case, however, August 4, 1993, the date of filing the district court action, was two and a half months beyond the limitations period in Section 16(a)(2). For the petitioners to succeed here, the two year limitations period must be stretched from May 17, 1993, to August 4, 1993. The first instance of potential application of tolling cited by *Irwin* thus does not apply.

The other example offered in *Irwin* for the application of equitable tolling is where a claimant is "induced" or "tricked" into delay. The cases cited by the Court in *Irwin* involve misrepresentation[9] or fraud.[10] In the present circumstances, no such allegations have been made. In fact, petitioners concede that they were aware of some provisions of the Vaccine Act as of August of 1992, over nine months prior to the running of the limitation period.[11] In fact their FTCA filings assume a knowledge of the availability of the Vaccine Act remedy. Unfortunately, however, petitioners were apparently under the incorrect impression that they could not proceed here without precise information about the vaccine manufacturer and lot number. This reading

of the statute is unwarranted. There is nothing in Section 11(c), which sets out the elements of a petition, that fairly can be read as a requirement to furnish the lot number and manufacturer of the vaccine. This should have been apparent to petitioners.

The petitioners' claims were thus filed under the wrong statute as well as in the wrong court. They do not contend that this error was induced by any misrepresentation or fraud on the part of a federal employee. They simply misread the Act to require the missing information. The court holds that, because there was no Government misconduct, petitioners' legal error is not grounds for application of equitable tolling.

## CONCLUSION

The Special Master correctly interpreted Section 11(a)(2)(B) in dismissing the petition. The decision below is affirmed and the Clerk is directed to enter judgment accordingly.

---

**9.** *Glus v. Brooklyn E. Terminal,* 359 U.S. 231, 233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959).

**10.** *Holmberg v. Armbrecht,* 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946).

**11.** The petition refers to obligations found in Section 25 that health care providers maintain records about the administration of vaccines, including date, manufacturer and lot number.