## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1999-CA-00225-SCT

*ERNEST ALAN COOK, SR., AND KATHLEEN SHORKEY COOK, INDIVIDUALLY, AND ON BEHALF OF THEIR MINOR SON, ERNEST ALAN COOK, SR.*

*v.*

*CHILDREN'S MEDICAL GROUP, P. A., NOEL WOMACK, M.D., LISA STONE, M.D., WILLIAM SMITH, M.D., AND PARKER ELLISON, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/1998 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | S. T. RAYBURN |
| | RONALD HENRY PIERCE |
| ATTORNEYS FOR APPELLEES: | MILDRED M. MORRIS |
| | FRANK A. WOOD, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED AS MODIFIED IN PART; REVERSED IN PART AND REMANDED - 12/09/1999 |
| MOTION FOR REHEARING FILED: | 12/23/99; denied 3/16/2000 |
| MANDATE ISSUED: | 3/23/2000 |

### BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.

### PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

#### STATEMENT OF THE CASE

¶1. This is an appeal from a dismissal with prejudice by the Circuit Court of Hinds County, Mississippi. A complaint alleging negligent or intentional fraudulent misrepresentation was filed in the Hinds County Circuit Court by Ernest Alan Cook, Sr. and Kathleen Shorkey Cook (hereinafter "Cooks"), individually and on behalf of their minor son, Ernest Alan Cook, Jr. (hereinafter "Ernie"), against Children's Medical Group, Dr. Noel Womack, Dr. Lisa Stone, Dr. William Smith and Dr. Parker Ellison (hereinafter referred to collectively as "CMG") on February 13, 1998.

¶2. On June 18, 1998, CMG filed a motion for summary judgment under Miss. R. Civ. P. 56(c). The circuit court judge considered CMG's motion as a "hybrid motion" allowing for review under Miss. R. Civ. P.

[12(b)(6)](#) or [Miss. R. Civ. P. 56](#). The circuit judge decided that under either or both standards the case should be dismissed with prejudice and ruled accordingly on CMG's motion. The opinion, order and final judgment were entered on November 13, 1998. On December 8, 1998, this appeal was timely noticed.

## STATEMENT OF THE FACTS

¶3. CMG filed a motion for summary judgment on June 18, 1998. CMG denied none of the facts alleged in the plaintiff's complaint, arguing that even if everything the plaintiffs asserted was true, summary judgment should still be granted because plaintiffs failed to comply with the National Childhood Injury Compensation Act of 1986 (hereinafter "the Act"). The circuit court judge noted that this motion resembled a Rule 12(b)(6) and Rule 56 motion, but commented that both parties treated the motion as one for summary judgment under Rule 56. The judge analyzed the motion under both Rule 12(b)(6) and Rule 56 standards, determining that under either standard the case should be dismissed with prejudice. The standard for each Rule is similar in that the non-moving party is favored in the review of the facts. Based on the complaint and the motion for summary judgment the following facts are undisputed:

¶4. Ernie Cook, the minor son of Ernest and Kathleen Cook, was born without complications on February 14, 1990. Kathleen had appropriately adhered to prenatal care and all checkups showed Ernie to be of normal development. After Ernie's birth, pediatric care began on March 1, 1990, at the Children's Medical Group (CMG) under the care of Dr. Womack. Ernie was in good health at this time and received his #1 DPT[1] and OPV vaccinations on April 13, 1990, at the age of two months.

¶5. At the age of four months, Ernie received his #2 DPT and OPV at Dr. Womack's office on June 11, 1990. Prior to this round of vaccination, Ernie had been a normally developing child. Within hours after this second round, however, Ernie screamed and cried for hours, developed a high fever, experienced periods of trembling, coma-like states of unresponsiveness and refused to take sustenance. The injection site was swollen. He was taken to CMG the day after the vaccination, and the Cooks were told by the attending doctor that nothing was wrong. Tylenol was prescribed to reduce Ernie's fever. After the June 11, 1990, vaccination, Ernie's behavior changed as he began to exhibit signs which have now been recognized as autistic-like symptoms. For seven years, however, the Cooks continued to express concerns to CMG about Ernie's behavior. Each time the Cooks were assured that Ernie's behavior was perfectly normal and that his symptoms in no way indicated any abnormality. The Cooks were repeatedly told that their concerns were unfounded. During this seven year period, Ernie was treated by Doctors Womack, Smith, Stone and Ellison, each with CMG.

¶6. Later, Kathleen Cook watched a television program which discussed a connection between autistic-like symptoms and reactions to vaccinations. Prior to this time the Cooks had never been informed of a possible connection between reactions to vaccinations and child developmental disorders. Mrs. Cook promptly requested Ernie's medical records from CMG and examined them.

¶7. On one of the pages which referred to an office visit on February 4, 1993, Mrs. Cook observed the notation "no pertussis." Mrs. Cook did not understand the notation because she had been informed that Ernie had always received the DPT vaccination. Continuing to examine Ernie's record, she noticed that on another page, in an allergy block, there appeared the notation "D-T only." Mrs. Cook then called Dr. Ellison's nurse and inquired as to what "no pertussis" meant. She was informed that it meant that Ernie had experienced an adverse reaction to pertussis.

¶8. Mrs. Cook began matching Ernie's shot cards with the vaccinations listed with dates on the medical records. It was then she noticed that some of the vaccination pages were missing from the records she was given, notably the pages containing entries for Ernies #1 and #2 DPT and OPV vaccinations (4/13/90 and 6/11/90). Mrs. Cook returned to CMG and obtained the missing pages. She then discovered that these pages documented that Ernie had experienced an adverse reaction to his #2 DPT vaccination. In all subsequent vaccinations, CMG removed the pertussis from Ernie's vaccine protocol, administering only DT and OPV vaccinations. The Cooks were never informed of this change or of Ernie's reaction.

¶9. Later tests conducted at the University of Mississippi Medical Center led to a diagnosis that Ernie suffered developmental symptoms and traits similar to autism and Pervasive Development Disorder Not Otherwise Specified (PDDNOS), an autism spectrum disorder. Ernie does not have stereotypical autism. He has a normal IQ and is capable of some spontaneous speech. He does, however, have problems with attention, frustration and obsessive behavior and suffers from sensory difficulties in all five senses. Despite his normal IQ, Ernie is incapable of functioning normally in social settings. In addition to PDDNOS, Ernie has an expressive language disorder. It is unclear whether Ernie will ever be able to function at a normal level.

¶10. Ernie and his parents bring suit alleging intentional misrepresentation in breach of CMG's fiduciary duty to Ernie and his parents. In the motion for summary judgment, CMG contends that the parents filed suit only on Ernie's behalf and that they did not comply with the clear stipulations of the National Childhood Injury Compensation Act of 1986 (the Act).

¶11. The Act, 42 U.S.C. §§ 300aa-1, *et seq.*, was created in response to the growing number of lawsuits stemming from vaccine-related injuries which resulted in large awards. Such lawsuits caused an increase in the cost of vaccinations and forced some manufacturers to cease production. Fearing a decline in the vaccination of children and the possibility of resulting epidemics, Congress passed the Act which established a "no-fault" compensation system for victims of vaccine-related injuries while simultaneously protecting vaccine manufacturers and administrators from crushing liability. *See generally* **Schafer v. American Cyanamid Co.**, 20 F.3d 1, (1st Cir. 1994). The trust established under the Act is funded by a tax on all vaccines. 42 U.S.C. § 300aa-15(f)(4)(A).

¶12. 42 U.S.C. § 300aa-11(a)(2)(A) states:

> No person may bring a civil action for damages. . . against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine. . . unless a petition has been filed in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and-

> (i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and

> (II) such person elects under section 300aa-21(a) of this title to file such an action, or

> (ii) such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.

42 U.S.C. § 300aa-11(a)(2)(B) further states that: "If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the Court shall dismiss the action."

¶13. It is a fact that Ernie and his parents did not file a petition. They assert that due to the intentional fraudulent misrepresentation of CMG, the thirty-six month statute of repose ran, preventing them from filing suit. In their motion for summary judgment, CMG does not deny the Cooks' assertions, but relies upon the plain language of the above mentioned sections of the Act in seeking dismissal.

¶14. After considering the matter, the circuit judge determined that the Cooks filed suit only on behalf of Ernie and that his injury should have been petitioned as required by the Act. The judge then dismissed with prejudice the Cooks' case as barred under the plain language of 42 U.S.C. § 300aa-11(a)(2). The opinion, order and final judgment were entered on November 13, 1998.

## STATEMENT OF THE ISSUES

**I. WHETHER THE LOWER COURT ERRED IN GRANTING CMG'S MOTION FOR SUMMARY JUDGMENT UNDER THE VACCINE INJURY COMPENSATION ACT ("THE ACT") REGARDING A CLAIM FOR INTENTIONAL (FRAUDULENT) MISREPRESENTATION IN STATE COURT.**

**A. WHETHER THE ACT PRECLUDES A SUIT BROUGHT IN STATE COURT FOR FRAUDULENT MISREPRESENTATIONS MADE BY CMG TO THE COOKS AFTER ERNIE'S VACCINATION.**

**B. WHETHER ERNIE, THROUGH HIS PARENTS, PROPERLY FILED IN STATE COURT.**

## DISCUSSION OF THE LAW

**I. WHETHER THE LOWER COURT ERRED IN GRANTING CMG'S MOTION FOR SUMMARY JUDGMENT UNDER THE VACCINE INJURY COMPENSATION ACT ("THE ACT") REGARDING A CLAIM FOR INTENTIONAL (FRAUDULENT) MISREPRESENTATION IN STATE COURT.**

¶15. Because the parties and the court treated the motion as one for summary judgment even though there were elements from both Rule 12(b)(6) and Rule 56, this Court should treat the motion as one for summary judgment and employ the following standard of review:

> Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a *de novo* standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*Mississippi Dep't of Wildlife, Fisheries & Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc.*, 740 So.2d 925, 929-30 (Miss. 1999) (*citing **McCullough v. Cook**, 679 So.2d 627, 630 (Miss.1996)*) (*quoting **Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co.**, 594 So.2d 1170, 1172 (Miss.1992); **Clark v. Moore Mem'l United Methodist Church**, 538 So.2d 760, 762 (Miss.1989)). In the instant case, there is no genuine issue of material fact. The only questions concern matters of law. Thus, a *de novo* standard of review is proper.

### A. WHETHER THE ACT PRECLUDES A SUIT BROUGHT IN STATE COURT FOR FRAUDULENT MISREPRESENTATIONS MADE BY CMG TO THE COOKS AFTER ERNIE'S VACCINATION.

¶16. CMG's argument is quite simple: given the plain language of the Act under 42 U.S.C. § 300aa-11(a)(2)(A), Ernie, by and through his parents, failed to first file a petition and exhaust the federal remedial system before filing suit in state court. CMG contends that fraudulent misrepresentation falls under the purview of the Act. The disputed language states:

No person may bring a civil action for damages. . . against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine. . . unless a petition has been filed in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and-

(i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and

(II) such person elects under section 300aa-21(a) of this title to file such an action, or

(ii) such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.

42 U.S.C. § 300aa-11(a)(2)(A).

¶17. The Cooks and Ernie equally argue that the plain language clearly does not bar a suit for fraudulent misrepresentation in this instance because the alleged illegal conduct took place after the vaccination of Ernie, for a period extending over several years, and that several doctors, beyond the one who actually inoculated Ernie (the doctor who gave Ernie the vaccine is in fact unknown at this time), were involved in the deceit. The Cooks' specifically point out that theirs is a suit for fraud, not medical malpractice.

¶18. The Court faces the issue whether a suit for fraudulent misrepresentation is a "civil action. . . against a vaccine administrator or manufacturer. . . for damages arising from a vaccine-related injury. . . associated with the administration of a vaccine." 42 U.S.C. § 300aa-11(a)(2)(A). This Court has a "duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature." ***Marx v. Broom***, 632 So.2d 1315, 1318 (Miss.1994). Consequently, if a statute "is not ambiguous, the court should simply apply the statute according to its plain meaning...." ***City of Natchez v. Sullivan***, 612 So.2d 1087, 1089 (Miss.1992).

¶19. Under § 11(a)(2)(A) a suit is a "civil action" only if it is brought against a vaccine manufacturer or administrator. Federal courts have unequivocally supported this definition. *See **Schumacher v. Secretary of Dep't of Health & Human Servs.**, 2 F.3d 1128, 1132-34 ( Fed. Cir. 1993); see also **Klahn v.**

***Secretary of Dept' of Health & Human Servs.***, 31 Fed. Cl. 382, 388 (1994). The instant case clearly does not involve a vaccine manufacturer, and the administrator is unknown. For purposes of the Act, an administrator is "the one who actually inoculates the individual." ***Klahn***, 31 Fed. Cl. at 389. Because CMG is being sued for the acts of its doctors as agents, the fact that the administrator of the vaccine is unknown is irrelevant. Ernie was vaccinated by an employee of CMG. Under the plain meaning of the Act, this is a civil action against a vaccine administrator. The analysis, however, must continue.

¶20. Not only must the civil action be against a vaccine administrator, the suit must be "for damages arising from a vaccine-related injury." 42 U.S.C. § 300aa-11(a)(2)(A). This stipulation is further circumscribed by the requirement that the vaccine-related injury be "associated with the administration of a vaccine." 42 U.S.C. § 300aa-11(a)(2)(A). The damages sought in the instant case are as follows: 1) the award that would have been granted under the Act had CMG's fraudulent misrepresentations not time barred Ernie from filing; 2) past and future medical expenses incurred as a result of the vaccine-related injury; 3) emotional distress and mental anguish; and 4) punitive damages. The first claim for damages are claimed by Ernie, while the last three are claimed by his parents individually.

¶21. Under the plain language of the Act, the Court must examine the damages sought by the Cooks and determine if they arise from a vaccine-related injury. In simple language, the question is whether the damages sought resulted from Ernie's adverse reaction to the inoculation. The answer in the instant case is no.

¶22. Concerning the Cooks, the damages sought resulted from CMG's alleged intentional fraudulent misrepresentations, apart from the inoculation. The Cooks seek past and future medical expenses incurred as a result of the vaccine-related injury. This language suggests that they are in fact suing on the vaccine-related injury rather than on fraudulent misrepresentation. Upon closer inspection, however, this problem vanishes.

¶23. While the actual language used in the Cooks' complaint reflects the language used under the Act regarding recovery for past and future medical expenses, under Mississippi law, recovery for medical expenses associated with a child's injuries are properly recoverable by the parents; thus in state court, a claim for such expenses properly belongs to the parents. ***Lane v. Webb***, 220 So.2d 281, 286 (Miss. 1969). Double recovery would not be allowed for past and future medical expenses. Either Ernie or his parents would be allowed to recover medical expenses. ***Id***.

¶24. Recovery for emotional distress and mental anguish, as well as punitive damages, is allowed for fraud cases. ***T.G. Blackwell Chevrolet Co. v. Eshee***, 261 So.2d 481, 485 (Miss. 1972). Allegedly, CMG's fraudulent misrepresentations allowed the Cooks to continue to believe that their child was progressing normally, while the reality was that Ernie suffered from autism. The damages sought by the Cooks stems from the alleged intentional fraudulent misrepresentations of CMG and not from the autistic injury received by Ernie as a result of his vaccinations.

¶25. At its core, the basis of the suit is the breach of CMG's fiduciary duty not to deceive its patients. A fraud cause of action, and the Act do not regulate the same activity. A fraud action permits the recovery of damages attributable to reliance upon an intentional misrepresentation. The Act provides a vehicle for the recovery of damages resulting from a vaccine related-injury associated with the administration of a vaccine. Although the alleged misrepresentation may be in regard to a vaccine-related injury, the wrong endeavored to be rectified is not the subject of the misrepresentation but the act of the misrepresentation itself.

¶26. The suit by the Cooks is not based on Ernie's injury from the inoculation; thus, in this instance, the Cooks' intentional fraudulent misrepresentation suit is not for damages arising from a vaccine-related injury associated with the administration of a vaccine. As such, the instant case is beyond the scope of the Act and should be allowed to proceed in state court.

¶27. Not only is fraud beyond the scope of the Act, but the Cooks themselves would not be under the purview of the Act in this instance. The Cooks, as parents of a child who suffered a vaccine-related injury, may not individually file a petition under the Act; therefore, they may file a claim in state court. This issue has clearly been answered by the United States Court of Appeals for the First Circuit:

> First, one cannot easily interpret the statute as Cyanamid wishes, for the Act has no language at all that one might read as creating a bar to the type of suit before us. To the contrary, the Act subsection that creates the tort action bar says that it does not apply to this kind of lawsuit. The language that creates the bar, § 300aa-11(a), says: "[n]o person may bring a civil action for damages" (except in accordance with the Act's Vaccine-Court-related rules) until a Vaccine Court petition "has been filed." It then states specifically that "this subsection" (i.e. the subsection with the tort action bar):

> applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program.

> 42 U.S.C. § 300aa-11(a)(9) (emphasis added). A person "is qualified to file a petition" only if that person suffered a relevant injury or death after he or she "received a vaccine ... or contracted polio from another person who received an oral polio vaccine." Id. § 300aa-11(c)(1)(A). That is to say, unless a person "received a vaccine" or. . . caught polio from someone who did (or is the legal representative of such a person), he cannot file a petition. See, e.g., *Head v. Secretary of Health and Human Servs.*, 26 Cl.Ct. 546, 547 n. 1 (1992) (parent of injured child cannot petition except in representative capacity), aff'd, 996 F.2d 318 (Fed.Cir.1993). And, if he cannot file a petition with the Vaccine Court, the Act says that its tort suit ban does not apply to him.

*Schafer v. American Cyanamid Co.*, 20 F.3d 1, 5 (1st Cir. 1994). *Schafer* speaks clearly to the instant case. The Cooks did not receive a vaccine and therefore, are not qualified to individually file a petition under the Act. Consequently, they may bring an action in state court.

¶28. While CMG's motion for summary judgment was the proper motion regarding the Cooks' claims, the circuit court improperly granted the motion, whether viewed for lack of subject matter jurisdiction or upon the merits. Therefore, the decision of the circuit court to grant CMG's motion for summary judgment must be reversed, and the case remanded for a trial on the merits.

### B. WHETHER ERNIE, THROUGH HIS PARENTS, PROPERLY FILED IN STATE COURT.

¶29. Although fraud is beyond the scope of the Act, an issue remains as to whether Ernie's claim, brought through his parents, was properly filed in state court. While it is clear that the Cooks have the right to bring a suit on Ernie's behalf, Miss. R. Civ. P. 17(c), it is not clear whether a claim for fraud by Ernie was properly filed in state court.

¶30. Because Ernie is suing for damages he would have received under the Act had he been able to file, if

indeed Ernie were able to file in Federal Claims Court, his case for fraudulent misrepresentation would lack the essential element of injury. Ernie is actually suing for damages arising from a vaccine-related injury associated with the administration of a vaccine.

¶31. Ernie's fraud claim is based on the belief that he was time-barred from filing a claim under the Act due to CMG's fraud. The essential determination is whether the Act imposes a statute of repose or a statute of limitations in this instance, allowing the application of equitable estoppel.

¶32. As the Cooks properly point out, the Federal Circuit held that 42 U.S.C. § 300aa-16(a)(1) was a statute of repose regarding the filing of suits which involved a vaccine that was administered prior to the effective date of the Act and resulted in a vaccine-related injury. *Weddel v. Secretary of Health & Human Servs.*, 100 F.3d 929, 932 (Fed. Cir. 1996). Compensation for such injury could still be sought under the Act if a petition was filed within twenty-four months of the effective date of the Act. 42 U.S.C. § 300aa-16(a)(1). Since it was found to be a statute of repose, equitable tolling was not permitted. *Weddel*, 100 F.3d at 931-2.

¶33. The controlling facts of *Weddel* are not present in the instant case. Ernie's initial vaccine was administered on April 13, 1990, after the effective date of the Act. For those who were administered a vaccine after the effective date of the Act (October 1, 1988) and suffered a vaccine-related injury, Section 16(a)(2) applies and imposes a thirty-six month statute of limitations which begins to run upon the first symptom or manifestation of the onset of injury, not to be delayed until the time the petitioner has actual knowledge that the vaccine recipient has suffered an injury compensable under the Act. *Brice v. Secretary of Dep't of H.H.S.*, 36 Fed. Cl. 474, 478 (1996). It was further held in *Brice* that the doctrine of equitable tolling may be applied in such instances. *Id.* at 480; *see also Brown v. Secretary of Dep't of H.H.S.*, 36 Fed. Cl. 435, 439-40 (1996), *aff'd mem.* 111 F.3d 145 (Fed. Cir. 1997); *Levesque v. Secretary of Dept. of Dept. of H.H.S.*, 1999 U.S. Claims LEXIS 199, 4-14 (U.S. Ct. Fed. Cl., July 27, 1999).

¶34. Ernie's case falls under Section 16(a)(2) and is governed by the principles of *Brice* and *Brown*. The United States Court of Federal Claims has recognized that equitable tolling may be permitted where the petitioner has been delayed in filing through fraud or misrepresentation. *Brown*, 36 Fed. Cl. at 440 (citing *Irwin v. Department. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). Ernie may be able to proceed under the Act so long as he pursued his claim with due diligence. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (7th Cir. 1990).

¶35. Furthermore, if equitable tolling is permitted, Ernie's claim in state court should not be held to his detriment, but rather he should be allowed to file a petition under the Act within one year of the dismissal of his state civil action (with this appeal tolling such time limit). *Brown* 36 Fed. Cl. at 437-8 (commenting on 42 U.S.C. § 300aa-11(a)(2)(B)). Such matter, however, properly belongs before the United States Court of Federal Claims.

¶36. Depending upon the decision of the Federal Claims Court regarding the application of equitable tolling principles, Ernie may not be time barred from filing his petition under the Act. Although a fraudulent misrepresentation suit is beyond the purview of the Act, in this instance, Ernie is only seeking those damages which he would have recovered under the Act. Because he may as yet be able to recover under the Act, Ernie's claim should be dismissed. Should Ernie's claim be dismissed by the Federal Claims Court then Ernie may bring his suit in state court pursuant to 42 U.S.C. § 300aa-21. An issue regarding the lower court's dismissal of Ernie's claim, however, remains to be addressed.

¶37. CMG filed a motion for summary judgment, essentially claiming the circuit court lacked subject matter jurisdiction to hear the case because the Act required that the Cooks first file a petition in Federal Claims Court and exhaust the federal remedial system. If a court does not have subject matter jurisdiction to hear a case, then it cannot have jurisdiction to decide issues of fact and law, as required by Rule 56, in order to grant a motion for summary judgment which acts as an adjudication on the merits. Consequently, the filing of the motion as to Ernie was improper. CMG should have filed a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter.

¶38. The circuit court improperly granted CMG's motion for summary judgment for lack of subject matter jurisdiction. Regarding Ernie, the circuit court should have treated CMG's motion for summary judgment as a motion to dismiss for lack of jurisdiction over the subject matter and granted such motion pursuant to 42 U.S.C. § 300aa-11(a)(2)(B). *See generally* **Brown v. Secretary of Dep't of H.H.S.**, 1996 WL 741416 (Fed. Cl.), *aff'd* **Brown**, 36 Fed. Cl. 435 (1996), *aff'd mem.* 111 F.3d 145 (Fed. Cir. 1997).

<u>**CONCLUSION**</u>

¶39. Based on the analysis above, this Court finds that intentional fraudulent misrepresentation is beyond the purview of the Vaccine Act. The Court holds that the Cooks properly brought their individual case for fraudulent misrepresentation in state court and that the Circuit Court improperly granted CMG's motion for summary judgment. Accordingly, the judgment of the circuit court regarding the Cooks individually is reversed, and this case is remanded to the Hinds County Circuit Court for further proceedings consistent with this opinion.

¶40. Ernie's claim, however, should have been dismissed for lack of subject matter jurisdiction because he pled only those damages which would have been recoverable under the Act. Because the Federal Claims Court may apply the doctrine of equitable tolling, Ernie must first petition for relief under the Act before filing in state court. If his petition is dismissed as being time-barred, then he should be allowed to bring suit under state law if he desires. Accordingly, the summary judgment as to Ernie is modified as a dismissal for lack of subject matter jurisdiction and affirmed.

¶41. **AFFIRMED AS MODIFIED IN PART; REVERSED IN PART AND REMANDED.**

> **PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, MILLS AND COBB, JJ., CONCUR. SMITH, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J. WALLER, J., NOT PARTICIPATING.**

> **SMITH, JUSTICE, CONCURRING:**

¶42. I agree with the majority's conclusion that because Ernie may be able to recover under the Vaccine Act, his claim should be dismissed. As the majority explains, because Ernie has not attempted to bring his claim before the Federal Claims Court, his claim for fraudulent misrepresentation lacks the essential element of injury. The majority fails to note, however, that Ernie's claim also lacks the essential element of reliance. The majority states that should Ernie's claim be dismissed by the Federal Claims Court, Ernie may then bring his claim for fraudulent misrepresentation in state court. This statement implies that Ernie, once he establishes the element of injury, has a valid claim for fraudulent misrepresentation. Such is not the law of

this State as declared by this Court.

¶43. This Court has held that, in order to establish fraudulent misrepresentation, the following elements of fraud must be proven by clear and convincing evidence:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.

*Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999) (citing *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984); *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992)). Despite the fact that Ernie may have been injured by his parents' reliance on the alleged representations of CMG, CMG did not make the representations to Ernie, nor did CMG intend for Ernie to rely on the representations. Ernie did not hear the alleged representations, and he did not detrimentally rely on the representations. This Court has never held that actual reliance upon the representation itself is not required for fraud to be actionable, nor has it adopted a doctrine of imputed reliance, allowing the representations made to Ernie's parents and their reliance upon those representations to be imputed to Ernie. It is my view that the majority opinion implies that the law of this State may be to the contrary. I therefore concur only in the result reached by the majority.

## COBB, J., JOINS THIS OPINION.

1. Diptheria, pertussis and tetanus.