## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01215-SCT

*CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND TEXAS SNUBBING CONTROL, INC.*

*v.*

*GARY KNOSTMAN, TRUSTEE IN THE ESTATE OF BANKRUPTCY OF TOMLINSON INTERESTS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/1999 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID T. COBB |
| | ROBERT RUSSELL WILLIARD |
| ATTORNEYS FOR APPELLEE: | JEFFERY P. REYNOLDS |
| | EDWIN S. GAULT, JR. |
| | DANIEL M. WEIR |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 04/12/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/3/2001 |

### BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. This matter arises from an opinion and order entered by the Rankin County Circuit Court on June 17, 1999, granting Gary Knotsman, Trustee in the Estate of Bankruptcy of Tomlinson Interests, Inc. (Tomlinson), a summary judgment dismissing claims made by certain underwriters at Lloyd's of London on two liability indemnification insurance policies issued on Texas Snubbing Control, Inc. The trial court also entered a M.R.C.P. 54(b)[(1)] judgment on January 21, 2000. Tomlinson's cross-claim against Texas Snubbing for indemnification remains outstanding. The Underwriters and Texas Snubbing appeal the entry of summary judgment, and we address the following dispositive issue:

> WHETHER THE TRIAL COURT ERRED WHEN IT FOUND THAT TEXAS SNUBBING WAS NOT ENTITLED TO INDEMNITY BECAUSE IT VOLUNTARILY SETTLED THE UNDERLYING CASES.

Finding that this action by Texas Snubbing disqualifies it from indemnity, we affirm the judgment of the circuit court.

### FACTS

¶2. In February of 1985, Tomlinson drilled a sour gas well near the Johns Community in Rankin County, Mississippi, pursuant to a court order. This endeavor, the E. N. Ross No. 2 (well), served as a replacement

well for the E. N. Ross No. 1. In June of 1985, the well encountered problems "down hole." A drilling bit became lodged deep within the recesses of the hole causing the well to become "out of balance." In order to return the well to a balanced state for completion to full production depth or filled with concrete and abandoned, a snubbing operation[2] was required on the well site.

¶3. Texas Snubbing was engaged to perform that service under the supervision of its president, Jim Hutchins. Tomlinson required Texas Snubbing to purchase $2 million worth of liability insurance before hiring it to perform the unique and dangerous work. Hutchins told Dan and Daryl Pierce, Tomlinson's supervising engineers, that they would be required to sign a blank Texas Snubbing work order authorizing Texas Snubbing to enter the gas field. The back side of each work order consisted of a list of terms and conditions under which Texas Snubbing would work including an indemnity agreement.

¶4. On the evening of July 15, 1985, the well "blew out" when another contractor, Halliburton, lost a valve controlling one of the pumps regulating the flow of the well. Hutchins and others in direct control of the well ordered an increase in the pumping rate to six barrels per minute, apparently an amount in excess of what the remaining pumps could handle. The increased pressure caused the line to break resulting in hydrogen sulfide gas ($H_2S$) escaping into the atmosphere, forcing the evacuation of landowners and inhabitants within a three mile radius.

¶5. Thereafter, in due course, numerous groups of land owners and others allegedly exposed to $H_2S$ gas filed suit alleging negligence, trespass and nuisance naming Tomlinson and Texas Snubbing, among others, as defendants. Texas Snubbing answered denying negligence on its part, much less liability, pleading that actions of third parties caused the loss of the well. However, before litigation resolved these various and sundry claims, Lloyd's of London, Texas Snubbing's insurer, voluntarily chose to settle the claims.

¶6. Texas Snubbing, in turn, sued Tomlinson on the alleged indemnity agreement found on the reverse side of the work orders signed in the field by Tomlinson's representatives and demanded reimbursement for settlement claims paid to property owners totaling roughly $865,000 in addition to attorney's fees and litigation costs amounting to approximately $1,042,000 plus interest. Tomlinson answered asserting, among other things, that no contract was ever formed, or in any event, neither the contract nor Mississippi law required Tomlinson to reimburse Texas Snubbing for voluntary settlement payments it made to claimants. The circuit court granted Tomlinson's motion for summary judgment, from which the Underwriters and Texas Snubbing appeal.

## STANDARD OF REVIEW

¶7. A trial court's decision to grant summary judgment is reviewed de novo. *Hernandez v. Vickery Chevrolet-Oldsmobile Co.,* 652 So. 2d 179, 181 (Miss. 1995). This Court reviews the grant or denial of summary judgment under the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. *Cook v. Children's Med. Group, P.A.,* 756 So.2d 734, 739 (Miss. 1999). All evidentiary matters before this Court, including but not limited to admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. will be examined. *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362 (Miss. 1983). All evidence will be viewed in the light most favorable to the non-movant. *Cook,* 756 So.2d at 739. If no genuine issue of material fact is found and the moving party is entitled to judgment as a matter of law, entry of summary judgment is appropriate. *Brown,* 444 So. 2d at 362. The burden of demonstrating that no genuine issue of fact exists is on the moving party. *Cook,* 756 So.2d at 739.

## LEGAL ANALYSIS

WHETHER THE TRIAL COURT ERRED WHEN IT FOUND THAT TEXAS SNUBBING WAS NOT ENTITLED TO INDEMNITY BECAUSE IT VOLUNTARILY SETTLED THE UNDERLYING CASES.

¶8. The trial court surmised that in order to state a prima facie case against Tomlinson, Texas Snubbing must plead and prove that it was liable for the underlying claims, reversing its position of consistently denying liability in the underlying negligence suits it voluntarily chose to settle. The trial court found that the facts of this case do not support such a shift and cited *Great S. Box Co. v. Barrett,* 231 Miss. 101, 94 So. 2d 912 (1957) as authoritative on the matter. The *Barrett* case involved an automobile accident between a car in which Barrett was a passenger driven by Palmer, and a truck operated by Great Southern Box Co. Great Southern, in its answer to Barrett's complaint, denied any negligence which proximately caused the accident, instead blaming the entire incident on Palmer. However, Great Southern simultaneously filed a motion to change venue. In its motion, Great Southern charged that venue was improper in the county the plaintiff selected because no evidence could be found showing Palmer proximately caused the injury. This Court held:

> The Box Company and Thompson cannot be heard to say on the one hand that they were not liable because Palmer was solely responsible for one purpose of the suit, and, without withdrawing or amending that position, say in the same judicial proceeding, for another purpose, that not Palmer but they were solely responsible for the collision.

*Id.* at 111-12, 94 So. 2d at 916 (citing 31 C.J.S. *Estoppel* § 117, p. 378).

¶9. Relying on this language, the trial court pointed out that Texas Snubbing had the option to litigate these cases, yet chose to settle them instead. The trial court further noted that now, fourteen years later, Texas Snubbing attempts to litigate the issues and recover some of the settlement money through indemnity.

¶10. The trial court found that assuming Texas Snubbing could prevail on the issue regarding contractual indemnity, its claim would still fail because it voluntarily settled the lawsuits brought by the property owners. The trial court correctly noted that in order for Texas Snubbing to recover from Tomlinson, Texas Snubbing must prove that (1) it was legally liable to an injured third party, (2) that it paid under compulsion, and that (3) the amount it paid was reasonable. *Keys v. Rehab. Ctrs., Inc.,* 574 So. 2d 579, 584 (Miss. 1990). Texas Snubbing failed to plead these necessary elements and further failed to demonstrate a genuine issue of material fact for trial concerning these elements.

¶11. While Texas Snubbing recognizes that under common law, a party seeking indemnity must prove its underlying liability, it believes that within the confines of a contractual indemnity case the obligation to indemnify is governed by the language of the contract. It argues that this provides an exception of some sort from the aforementioned elements of proof needed to procure recovery. As support for this proposition, Texas Snubbing cites the following:

> From the foregoing we hold that both within the literal language of the indemnity provisions and in accordance with the intention of the contracting parties there was no contractual requirement that the contractor must be negligent in order for the indemnity provisions to operate.

*Blain v. Sam Finley, Inc.,* 226 So.2d 742, 746 (Miss. 1969). The *Blain* case involved an action by a

contractor to recover from a subcontractor through indemnity provisions of the subcontract. The contractor sought expenses, costs and attorneys' fees he incurred in defense of a suit regarding the death of one of his employees that occurred in the due course of his employment. In *Blain*, the indemnity agreement provided:

> Subcontractor shall also pay all of the expense and cost and attorney's fees incurred by Contractor in the enforcement of the conditions and obligations of this subcontract and of any bond furnished in connection herewith or incurred in the investigation or defense of any action arising out of this subcontract or out of the non-payment of any claim of any third party, *whether such claim is valid or not*, or out of the performance or non-performance of the work hereunder.

*Id.* at 746 (emphasis added). The *Blain* Court explained that:

> Having already concluded that the contract in the present case is broad enough to indemnify Blain against his own negligent acts, we need not consider the fact that the allegations of negligence of Blain, under any circumstances, were totally untenable. *Moreover, the indemnity provisions of the contract in the case at bar specifically refer to the recovery of expenses and attorneys' fees even where the claims are groundless.*

*Id.* at 746 (emphasis added). The trial court seized upon the emphasized language holding that the *Blain* case was easily distinguishable from this matter in that the contract in *Blain* specifically provided for indemnification for settlements of claims without regard to the validity or liability of the claim. The work orders in the case sub judice did not contain similar language.

¶12. Additionally, *Keys* holds that in order for an indemnitee to recover, he must allege and prove he was legally liable to the injured party and paid under compulsion. *Keys,* 574 So. 2d at 584. Texas Snubbing failed to do this. Texas Snubbing argues that it would have proven these elements at trial. However, Jim Hutchings, President of Texas Snubbing, has consistently denied liability or any wrongdoing associated with the blowout in previous depositions and court proceedings. This position is best exemplified by Texas Snubbing's reply to Tomlinson's counterclaim, wherein it again denied liability for any matters concerning the blowout.

¶13. Texas Snubbing's hopes of recovery seem to rely upon proving Tomlinson's negligence at trial. Texas Snubbing did not prove any of the necessary elements needed to recover under the theory of contractual liability during the summary judgment hearing, and all parties agreed that it was a question of contractual liability. There is no genuine issue of material fact in question here.

## CONCLUSION

¶14. We affirm the trial court's conclusion that Texas Snubbing's voluntary settlements of the underlying cases prevents it from claiming indemnity against Tomlinson as it failed to plead and prove the necessary *Keys* factors. Accordingly, we affirm the judgment of the Rankin County Circuit Court.

¶15. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR.**

1. M.R.C.P. 54(b) provides:

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

2. A snubbing operation is designed to control the pressure of oil or gas in a well in order to insert or retract tubing, drill pipe or casing. Performing this highly specialized procedure prevents the well operator from having to "kill" the well, or stop production to equalize the pressure within it.