# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2014

Lyle W. Cayce
Clerk

No. 12-60762
c/w No. 12-60777

LIBERTY MUTUAL INSURANCE COMPANY; EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company,

Plaintiffs-Appellants,

v.

JERROLL LAVON HOLLOWAY, also known as J.L. Holloway,

Defendant-Appellee.

_____

LIBERTY MUTUAL INSURANCE COMPANY, and EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company,

Plaintiffs-Appellants,

v.

J. L. HOLLOWAY, RON W. SCHNOOR, CARL M. CRAWFORD, KIM ADKINS, W. EDWARD TREHERN,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Mississippi
U.S.D.C. No. 3:98-CV-611
U.S.D.C. No. 3:01-CV-935

Before REAVLEY, DAVIS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

These consolidated appeals include two separate, but related lawsuits. The first involves a fraud action by an insurer to recover workers' compensation premiums and a subsequent settlement to that suit which went awry. The second concerns a suit to enforce a personal guaranty made by a defendant in the fraud settlement agreement. We consider two primary issues. First, whether the defendant, J.L. Holloway, as a personal guarantor to the principal obligor on the settlement agreement, was entitled to a credit on his guaranty obligation as a result of payments made by other parties to the settlement. Second, whether the district court erred when it dismissed the workers' compensation fraud litigation. For the reasons that follow, we reverse the district court.

I.

This litigation began in 1998, when the plaintiffs, Liberty Mutual Insurance Company and Employers Insurance of Wausau ("the insurers," collectively), brought suit against Holloway, his companies, including Friede

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60762 c/w 12-60777

Goldman International, Inc. ("Friede Goldman") and Ham Marine, Inc., and several other parties, including Stewart Sneed Hewes, Inc.,[1] for fraud, RICO, conspiracy, and common law claims related to the defendants' misrepresentation of their risk in order to pay Liberty lower premiums for workers' compensation insurance. That lawsuit (the "Fraud Litigation") was settled in 2001 pursuant to a Settlement Agreement (the "Settlement Agreement"). The Settlement Agreement required the defendants, through Friede Goldman,[2] to pay $4.5 million to the insurers in three payments of $2 million, $1.25 million, and $1.25 million. Holloway personally guaranteed the third payment of $1.25 million in the event that Friede Goldman was unable to make the payment. The Settlement Agreement provided for dismissal of the action upon full and final payment of $4.5 million. If, for any reason, full and final payment was not made, the insurers were entitled to retain settlement proceeds already paid and return the case to the active docket. The district court issued an administrative stay in the Fraud Litigation pending successful completion of the Settlement Agreement.

Friede Goldman made the first two payments and soon after filed for Chapter 11 bankruptcy in April 2001.[3] Friede Goldman sought permission

---

[1] Stewart Sneed Hewes, Inc. was later replaced as a defendant by BancorpSouth Bank as successor by way of a merger between the two companies. BancorpSouth's role in this case is limited to a $500,000 settlement agreement it reached with the insurers.

[2] Friede Goldman was the parent company of many of the defendant companies in the Fraud Litigation. The payments were due as follows: $2 million on January 3, 2001; $1.25 million on April 2, 2001; and $1.25 million on July 2, 2001.

[3] *See* 11 U.S.C. § 1101 *et seq.* Chapter 11 bankruptcy proceedings ordinarily are brought by a debtor in possession and culminate in the confirmation of a plan of debt reorganization

No. 12-60762 c/w 12-60777

from the bankruptcy court to make the third and final payment to the insurers, but the bankruptcy judge denied the request. Instead, the bankruptcy judge encouraged the Chapter 11 Trustee to file a lawsuit against the insurers to reclaim the first two settlement payments, totaling $3.25 million, on the grounds that they were "preference" payments under 11 U.S.C. § 547(b).[4] The Trustee proceeded to file that suit to recover the payments.

While the bankruptcy proceedings were ongoing, the insurers requested the third and final payment of $1.25 million from Holloway in accordance with his personal guaranty. After first refusing to pay, Holloway eventually agreed to pay the $1.25 million, but only in exchange for the full and final release of all defendants in the Fraud Litigation. The insurers refused to grant the release because the bankruptcy preference litigation was still pending, and they did not yet know whether they would retain the entire $3.25 million paid in the first two payments. Holloway declined to pay the remaining $1.25 million without the releases.

As a result, the insurers filed a lawsuit against Holloway to enforce his personal guaranty (the "Guaranty Litigation"), claiming Holloway had

---

rather than liquidation. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 36 (2008).

[4] A "preference" is a transfer of a debtor's assets, during a specified pre-bankruptcy period, that unjustifiably favors the transferee over other creditors. Under § 547(b), a bankruptcy trustee can "avoid" any transfer of property if: a) the transfer was to a creditor on account of a pre-existing debt, b) the debtor was insolvent at the time of the transfer, c) the transfer occurred within 90 days before the bankruptcy filing, and d) the transfer enabled the creditor to receive a larger share of the estate than if the transfer had not been made. *See* 11 U.S.C. § 547(b). The two payments to the insurers likely satisfied these requirements.

No. 12-60762 c/w 12-60777

breached the agreement by refusing to honor his agreement to pay. The Complaint in the Guaranty Litigation contained multiple counts: counts I and II sought the $1.25 million payment for the insurers under the terms of the contract, and counts III and IV alleged tort claims. The insurers filed a motion for partial summary judgment as to counts I and II, which the district court denied based on the pending bankruptcy preference litigation.

Meanwhile, the insurers settled the preference suit with the Chapter 11 Trustee. The insurers agreed to return $1.9 million of the $3.25 million they had been paid by Friede Goldman, keeping only $1.35 million. After settling the preference litigation, the insurers contacted other defendants in the Fraud Litigation in an effort to recoup their lost funds. Ultimately, the insurers received a $500,000 payment from BancorpSouth, who succeeded Stewart Sneed Hughes, Inc. as a defendant, in exchange for a full release of liability and dismissal of all claims against it.

Then, in the Guaranty Litigation, the insurers offered Holloway a full release and dismissal of claims against him in exchange for the third and final $1.25 million payment he had personally guaranteed. Holloway again refused to pay, contending that in light of the $500,000 payment the insurers received from BancorpSouth, his personal obligation was reduced by the amount of that payment to $750,000. The insurers, on the other hand, denied that any such credit should be applied to Holloway's obligation. Holloway filed a motion for summary judgment arguing his right to the $500,000 credit, and the insurers re-urged their original partial motion for summary judgment seeking the full

5

No. 12-60762 c/w 12-60777

$1.25 million from Holloway, which the district court had previously denied while the preference litigation was still pending.

While these motions were pending in the Guaranty Litigation, the district court entered an order in the Fraud Litigation directing that Holloway's motion to enforce settlement be "subsumed" in the district court's disposition of the cross motions for summary judgment pending in the Guaranty Litigation.[5]

On September 20, 2010, the district court granted Holloway's Motion for Summary Judgment in the Guaranty Litigation, deciding that Holloway owed the insurers the reduced total of $750,000. The district court also ruled that the insurers could not establish the elements necessary to recover any of the money they lost on account of the $1.9 million they returned to the Trustee in the preference litigation, despite the fact that the insurers would not receive the full $4.5 million agreed to in the original Settlement Agreement. The district court did not assess prejudgment interest on this award, and entered a subsequent Final Judgment in which it assessed costs against the insurers.

On August 21, 2012, the district court issued an Order dismissing the Fraud Litigation, incorporating by reference its September 2010 Memorandum Opinion and Order in the Guaranty Litigation. The insurers timely appealed the district court's order on summary judgment and its subsequent Final Judgment in the Guaranty Litigation. The insurers also appeal the district

---

[5] By this ruling, the court apparently agreed with Holloway that the other defendants in the Fraud Litigation were entitled to full releases from the insurers in exchange for a $750,000 payment to the insurers.

## No. 12-60762 c/w 12-60777

court's decision to "subsume" the Fraud Litigation into the Guaranty Litigation, and the court's dismissal of the insurers' insurance fraud suit.

## II.

This Court reviews *de novo* determinations of motions for judgment on the pleadings and for summary judgment.[6] In addressing a motion for summary judgment, we "view[] all evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor."[7] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]

One of the issues raised by the insurers on appeal is the enforcement of Holloway's personal guaranty. A guaranty is a contract, the interpretation of which this Court reviews *de novo*.[9]

We review a determination of prejudgment interest[10] and costs[11] for an abuse of discretion.

## III.

We first address whether the district court erred in the Guaranty Litigation when it applied the $500,000 paid by BancorpSouth in its settlement

---

[6] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

[7] *Id.*

[8] FED. R. CIV. P. 56(c).

[9] *Westlake Petrochem., L.L.C. v. United Polychems., Inc.,* 688 F.3d 232, 245 (5th Cir. 2012)

[10] *Carpenters Dist. Council v. Dillard Dep't Stores*, 15 F.3d 1275, 1288 (5th Cir. 1994).

[11] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 334 (5th Cir. 1995).

agreement as a credit to Holloway's personal guaranty obligation. Our decision on this issue turns upon whether Holloway's personal guaranty is separate and distinct from the initial Settlement Agreement and BancorpSouth's settlement agreement. For the reasons set out below, we find Holloway's personal guaranty is independent of the two other agreements. Each of the three agreements is a separate contract, the interpretation of which is governed by state law. Under Mississippi law, our interpretation of the contracts begins by looking first to the four corners of the documents in question. [12] "'An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity' will be enforced."[13] "[I]f . . . a contract is clear and unambiguous, then it must be interpreted as written."[14]

The initial Settlement Agreement and Holloway's personal guaranty are, by their terms, separate and distinct contracts. The parties to the Settlement Agreement are the insurers on the one hand, and each of the defendants to the Fraud Litigation on the other. Holloway's personal guaranty of the third and final payment expressly provides that "This [Personal Guaranty] is separately accepted by the undersigned, J.L. Holloway." Holloway was thus the only defendant subject to personal liability in the event that Friede Goldman was unable to make the payment.

The terms of BancorpSouth's settlement agreement also plainly show

---

[12] *Zumwalt v. Jones County Bd. of Sup'rs*, 19 So. 3d 672, 685 (Miss. 2009) (citation omitted).

[13] *Id.* (quoting *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990)).

[14] *United States Fidelity and Guar. Co. of Mississippi v. Martin*, 998 So. 2d 956, 963 (Miss. 2008); *see also Time Ins. Co. v. Estate of White*, 447 F.App'x 561, 564 (5th Cir. 2011).

that it is distinct from Holloway's personal guaranty. BancorpSouth, as a defendant in the Fraud Litigation, agreed to settle with the insurers in light of the likelihood that the insurers' fraud suit would be returned to the docket. BancorpSouth's settlement agreement provides that the $500,000 paid by BancorpSouth "is not intended to be nor is it in fact a partial payment of the $1.25 million which J.L Holloway guaranteed to pay and for which he has been sued." Instead, the payment was meant "to compromise, in light of the uncertainties of litigation, any potential larger judgment, if any, which might be rendered against [defendants] should the [Fraud] Litigation continue and be pursued to judgment before a trier of fact." BancorpSouth and the insurers plainly intended for their settlement agreement to be separate and distinct from Holloway's personal guaranty of the third and final settlement payment. We find nothing in the record which indicates BancorpSouth agreed to contribute to the fulfillment of Holloway's duty to pay on his personal guaranty.

Therefore, the district court erred when it credited BancorpSouth's $500,000 settlement payment against the $1.25 million Holloway owed pursuant to his personal guaranty. The credit should not have been applied because Holloway's personal guaranty was an independent agreement, not connected with either the original Settlement Agreement or BancorpSouth's settlement agreement. We therefore reverse the district court's grant of summary judgment in favor of Holloway, and grant summary judgment in favor of the insurers, who are entitled to recover from Holloway the full $1.25 million. The insurers moved for summary judgment on only two of the counts

No. 12-60762 c/w 12-60777

in their Complaint against Holloway. We therefore remand this case back to the district court for further proceedings on the remaining counts.

Next, we must determine whether the district court erred when it dismissed the Fraud Litigation based upon its grant of summary judgment in the Guaranty Litigation. The insurers argue the Fraud Litigation should not have been dismissed because they maintained their right to re-open the action if they did not receive the full payment provided for in the Settlement Agreement. If the insurers do not receive full payment, the Settlement Agreement gives them the right to "have the claims as set out in the Amended Complaint and Counterclaim [of the Fraud Litigation] returned to the active docket . . . and to have any Order staying the proceedings thereupon immediately dissolved . . . ." Although the insurers originally received payment of the first two installments from Friede Goldman, totaling $3.25 million, they returned more than half that amount, $1.9 million, to the Chapter 11 Trustee in the preference litigation. Therefore, even if the insurers receive full payment from Holloway on his personal guaranty, they will collect only $2.6 million out of the $4.5 million the defendants to the Fraud Litigation agreed to pay in the Settlement Agreement. Thus, full and final payment has not been made to the insurers and they have the right to return the Fraud Litigation to the active docket.[15] Accordingly, we reverse the district court's dismissal of the Fraud

---

[15] The district court classified the $1.9 million returned via settlement by the insurers to the Chapter 11 trustee as a voluntary payment, and therefore the insurers could not recover it back. Under Mississippi law, the volunteer rule prevents an individual or entity from recovering back a voluntary payment, defined as a "payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and

No. 12-60762 c/w 12-60777

Litigation.

## IV.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of Holloway in the Guaranty Litigation, and grant partial summary judgment in favor of the insurers on their claim. In addition, we REVERSE the district court's dismissal of the insurers' fraud suit. These cases are REMANDED to the district court for entry of judgment consistent with this opinion and for further proceedings on the tort counts of the insurers' action against Holloway, and for reconsideration of assessment of costs and interests in light of this opinion.

REVERSED and REMANDED.

---

which is not enforceable against [it], instead of invoking the remedy or defense which the law affords against such a demand." *Genesis Ins. Co. v. Wasau Ins. Cos.*, 343 F.3d 733, 736 (5th Cir. 2003) (quoting *McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman Co.*, 175 So. 2d 603, 605 (Miss. 1965)). We disagree with the district court's characterization; the insurers agreed to the settlement because they faced the likelihood of a judgment requiring them to return the entire $3.25 million in settlement payments from Friede Goldman back to the bankrupt estate in the preference litigation. In order to avoid returning the full amount, the insurers agreed to a compromise: they would return $1.9 million in exchange for dismissal of the preference suit. The volunteer rule does not apply to this payment because the insurers' payment was in settlement of a hotly contested litigation. The payment was compelled by the desire to limit their liability, and no one argues that the amount paid was unreasonable. *See Certain Underwriters at Lloyd's of London v. Knostman*, 783 So. 2d 694, 698 (Miss. 2001) (citation omitted); *see also Canal Ins. Co. v. First General Ins. Co.*, 889 F.2d 604 (5th Cir. 1989).

11