STEPHEN A. HIGGINSON, Circuit Judge:
This mandamus petition calls on us to correct a significant misapplication of attorney-client privilege law. The underlying lawsuit springs from a disputed corporate merger. Plaintiff-Petitioner Itron acquired a company called SmartSynch. According to Itron, misrepresentations by three of SmartSynch's corporate officers ("Defendants") caused it unknowingly to assume an unwanted $60 million contractual obligation to a third company, Consert. After years of litigation, Itron settled Consert's claims against it for $18 million. Itron now sues Defendants for negligent misrepresentation, seeking as compensatory damages the cost of the Consert litigation and settlement. Discovery is nearly complete.
On Defendants' motion, the presiding magistrate judge ordered Itron to produce, without qualification:
• "All documentation or correspondence including, but not limited to, emails, memoranda, letters, minutes, and reports of any kind, which include any analysis, assessment, or evaluations that were directed to, or received by, any member of Itron's management (including but not limited to its General Counsel) regarding the merits of Consert's claims or Itron's defenses thereto, and any proposed or actual settlement of the lawsuit."
• "All documents, communications, files, packages and presentations presented to the Board of Directors of Itron regarding or relating to ... the Consert Agreement and/or the Consert litigation."
• "All documents, communications, files, packages, presentations and minutes of the Board of Directors of Itron regarding or relating to the decision to settle the Consert Litigation."
• "All documents, including but not limited to all communications to or from [fifteen specifically-named attorneys with Gibson, Dunn & Crutcher LLP (the law firm who represented Itron against Consert) ], or any other attorney with Gibson Dunn, regarding or relating to the decision to settle the Consert Litigation."
• "All documents, including but not limited to all communications to or from [those same fifteen attorneys] or any other attorney with Gibson Dunn, regarding, relating to, or evidencing that the decision to settle the Consert Litigation *556 either 'was compelled by the desire to limit [Itron's] liability,' or that the 'amount paid [to settle the Consert Litigation] was reasonable.' " (alterations in original) (quoting Liberty Mut. Ins. Co. v. Holloway , 556 Fed.Appx. 299, 305 n.15 (5th Cir. 2014) ).
• "All documents, including all correspondence involving Itron's counsel, which relate to Itron's decision to settle the Consert Litigation."
Itron objected that many if not all of these materials are shielded from disclosure by the attorney-client privilege. But the magistrate judge disagreed, concluding that Itron waived its privilege by filing a lawsuit to which the attorney-client communications would be relevant. That was error.
We hold that the mere act of filing this lawsuit effected no waiver of any attorney-client privilege. We further hold that the magistrate judge's contrary ruling amounted to clear error warranting mandamus relief. We therefore GRANT Itron's petition for mandamus, VACATE the magistrate judge's order, and REMAND the case with instructions to re-evaluate Defendants' motion in a manner consistent with this opinion.[1]
I
Itron agreed to acquire SmartSynch for approximately $100 million. Six days before the closing date, however, SmartSynch entered a new agreement with third-party company Consert. Itron then assumed SmartSynch's obligations under the agreement as SmartSynch's successor-in-interest. Itron alleges that SmartSynch's CEO, CFO, and VP of Product Marketing (Defendants) negligently failed to disclose the Consert agreement; that the Consert agreement was adverse to Itron's financial interest; and that the Consert agreement committed Itron to unwanted expenditures exceeding $60 million. Itron allegedly discovered the agreement when Consert sent its first invoice. At that point, Itron filed a declaratory judgment action against Consert seeking to void or reform the agreement. See Itron, Inc. v. Consert Inc. , 109 A.3d 583, 584-85 (Del. Ch. 2015). Consert asserted counterclaims including breach of contract. After more than two-and-a-half years of litigation, Itron and Consert settled their dispute the weekend before trial. As part of the settlement agreement, Itron paid Consert $18 million.
Itron now sues all three Defendants for negligent misrepresentation under Mississippi law. See 28 U.S.C. §§ 1332(a), 1652. It alleges that Defendants' misrepresentations caused it to "unwittingly assume[ ] liability for the Consert Agreement," "result[ing] in substantial losses to Itron[ ] due to the Consert Litigation and the resulting settlement."
During the voluminous pretrial proceedings, Defendants moved to compel Itron to produce, among other things, the documents listed above. They argued that Itron "waived its attorney-client privilege as to all communications with counsel concerning potential exposure and settlement [with Consert]," because "whether Itron's settlement of Consert's counterclaims was compulsory and reasonable are disputed material issues" and "the most relevant evidence of whether the settlement was reasonable will be the opinions of counsel for Itron." Itron opposed the motion on the grounds that these documents reside at the "core" of the attorney-client privilege, *557 and that Itron never affirmatively relied on, used, or disclosed privileged communications, as required for this type of waiver under Mississippi law. See Jackson Med. Clinic for Women, P.A. v. Moore , 836 So.2d 767, 773 (Miss. 2003) ; see also In re Cty. of Erie , 546 F.3d 222, 229 (2d Cir. 2008) ; Rhone-Poulenc Rorer Inc. v. Home Indem. Co. , 32 F.3d 851, 864 (3d Cir. 1994). In fact, Itron said, it had stipulated that "so long as the Court does not find a privilege waiver, Itron will not affirmatively use any privileged information against Defendants in this case." Finally, Itron observed that Defendants were free to dispute the objective reasonableness of Itron's settlement by examining the underlying facts and calling expert witnesses, whom both sides had designated to address that very issue.
The magistrate judge granted Defendants' motion to compel in substantial part, ordering Itron to produce the documents listed above. The magistrate judge's order rejected Itron's argument regarding the proper legal standard under Mississippi law. But the order did not cite Jackson Medical (the primary case on which Itron relied), nor did it address how, under Defendants' proposed standard, the privileged materials were "vital" to the case. The order instead asserted that, "since Itron seeks in the present lawsuit to recover its Consert litigation losses from Defendants, the law in this Circuit will not permit Itron to withhold under claim of privilege the documents regarding the Consert litigation." Order [ECF No. 202] at 2-3, Itron, Inc. v. Johnston , No. 3:15-cv-330 (S.D. Miss. June 30, 2017) (citing federal district court opinions, themselves citing Conkling v. Turner , 883 F.2d 431, 434 (5th Cir. 1989) ).
Itron has been challenging that order ever since. It first lodged objections with the district court, but the district court overruled them on the ground that the magistrate judge's ruling was "not clearly erroneous." Itron then moved the district court for reconsideration, or, in the alternative, to certify the magistrate judge's order for interlocutory appeal. See 28 U.S.C. § 1292(b). Both motions were denied. Running up against the production deadline, Itron petitioned us for review.
II
In evaluating a claim of attorney-client privilege, we review factual findings for clear error and "the application of the controlling law de novo." In re Avantel, S.A. , 343 F.3d 311, 318 (5th Cir. 2003) (quotation mark omitted). The controlling law to be applied here is that of Mississippi, which governs Itron's causes of action and, by extension, any assertion of attorney-client privilege or putative waiver thereof. Id. at 323 ; see Fed. R. Evid. 501. Our task is to apply the law as would the Mississippi Supreme Court. Guilbeau v. Hess Corp. , 854 F.3d 310, 311 & n.4 (5th Cir. 2017).
Mississippi law gives clients the "privilege to refuse to disclose ... any confidential communication[s] made to facilitate professional legal services," if those communications were made "between the client ... and [its] lawyer" or "among lawyers ... representing the same client." Miss. R. Evid. 502(b). Like the magistrate judge, we assume (but do not decide) that the documents sought here-communications to or from Itron's attorneys relating to the merits of Consert's claims against it-meet this definition. The parties are free to contest this premise on remand with respect to particular documents. We decide today only whether Itron impliedly waived its attorney-client privilege by the mere act of filing this lawsuit. It did not.
*558 A
Ordinary waiver principles resolve the present dispute. By definition, the attorney-client privilege protects only confidential communications. Miss. R. Evid. 502(b). By disclosing such communications to third parties-such as by revealing them in open court-the client waives the privilege. Hewes v. Langston , 853 So.2d 1237, 1264 (Miss. 2003) ; see, e.g. , Bennett v. State , 293 So.2d 1, 5 (Miss. 1974) (client waived privilege by testifying to his counsel's advice at trial), overruled on other grounds by Triplett v. State , 579 So.2d 555, 559 (Miss. 1991), but cited in Jackson Med. , 836 So.2d at 771. And to prevent selective or misleading disclosures, fairness dictates that the waiver extend to related subject matter. E.g. , United States v. Woodall , 438 F.2d 1317, 1324-25 (5th Cir. 1970) (en banc); Century 21 Deep S. Props., Ltd. v. Corson , 612 So.2d 359, 374-75 (Miss. 1992). Hence the animating maxim that the privilege cannot "be used as both sword and shield."
By the same token, a client waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense-thereby putting those communications "at issue" in the case. See generally 8 Fed. Prac. & Proc. § 2016.6 (3d ed. updated Apr. 2017) ; 2 The New Wigmore: A Treatise on Evidence § 6.12.4(b)(2) (3d ed. 2017); 81 Am. Jur. 2d Witnesses § 329 (2d ed. updated Nov. 2017) ; 1 McCormick On Evidence § 93 (7th ed. updated June 2016). "In other words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." Willy v. Admin. Review Bd. , 423 F.3d 483, 497 (5th Cir. 2005).[2]
Mississippi adopted this rule expressly in Jackson Medical Clinic for Women, P.A. v. Moore , 836 So.2d 767, 773 (Miss. 2003). The plaintiff in that case, Grace Moore, had opposed the defendant medical clinic's motion for summary judgment on the ground that her attorney's bad advice tolled the statute of limitations. Id. at 768-69, 770-71, 773. After the trial court denied the clinic's motion, the clinic sought discovery into what Moore's attorney had told her. Id. at 768. That is, the clinic sought to test the factual assertion Moore had just used to overcome the clinic's statute-of-limitations defense. Moore invoked the privilege. Id.
*559 The Mississippi Supreme Court held that Moore waived her privilege as to those attorney-client communications when she "specifically pled reliance on [her attorney's] advice as an element of her defense to [the] motion for summary judgment." Id. at 773 (citing Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co. , 249 Conn. 36, 730 A.2d 51, 60 (1999) ). "When Moore used confidential communications with her attorney to toll the statute of limitations," the court explained, "she used the attorney-client privilege as a sword." Id. "[F]airness require[d]" that she not "hide behind the shield" of that same privilege now. Id. This holding aligns with the numerous cases across jurisdictions finding waiver "when a client asserts reliance on an attorney's advice as an element of a claim or defense," Sedco Int'l, S. A. v. Cory , 683 F.2d 1201, 1206 (8th Cir. 1982),[3] and the many dozens of cases finding no waiver when no such reliance has occurred.[4]
*560 Here, no one argues that Itron's complaint effected waiver under the Jackson Medical test. Although the complaint seeks as damages the amount of Itron's settlement with Consert, it never "specifically ple[ads] reliance" on any legal advice. Jackson Med. , 836 So.2d at 773. Nor does it refer to any "confidential [attorney-client] communications." Id. In fact, a person reading the complaint would have no idea that Itron even had attorneys in the Consert matter, were it not for the common-sense understanding that corporations engaged in prolonged, multimillion-dollar lawsuits tend to employ counsel. In short, because Itron's complaint mentions no attorneys, no attorney-client communications, and no attorney-client relationships, it cannot be said to "use[ ] the attorney-client privilege as a sword." Id. The privilege thus remains available. Accord In re Lott , 424 F.3d 446, 454 (6th Cir. 2005) ("[W]hile the sword stays sheathed, the privilege stands."). Although we do not foreclose the possibility that some other act by Itron might constitute waiver, we see no basis in Mississippi law for concluding the complaint itself had that effect.[5]
B
Defendants would have us broaden the Jackson Medical rule such that waiver occurs whenever the client files a lawsuit to which privileged communications, if disclosed, might prove "highly relevant"-even if the client never relies on or uses those communications to make her legal case. The magistrate judge embraced a more expansive rule, requiring only simple relevance. These expansions of Jackson Medical find no support in the Mississippi Rules of Evidence, see Miss. R. Evid. 502(d), or any Mississippi caselaw. And given Jackson Medical and other persuasive authorities, we conclude this is not the law the Mississippi Supreme Court would apply.
1
Take, for example, the subject's leading treatises. The New Wigmore calls Defendants' view "Draconian" and incapable of *561 justifying in any "meaningful" or "realistic sense" waiver. 2 New Wigmore, supra , § 6.12.4(b)(1). "[T]he overwhelming majority of courts ... find [this type of] waiver only when the specific allegations of the plaintiff's complaint refer to the content of a privileged communication," id. , or "when it is clear that the litigant's argument is that [it] w[as] relying on privileged advice from attorneys," id. § 6.12.4(b)(2). Wright and Miller concur: while "some courts have carried this waiver concept beyond the situation in which the privilege-holder affirmatively uses privileged material to support a claim or defense," those cases "do not fit within any sensible concept of waiver." 8 Fed. Prac. & Proc., supra , § 2016.6. Other treatises are in accord.[6] "As the Supreme Court put it in a different context, '[p]arties may forfeit a privilege by exposing privileged evidence, but do not forfeit one merely by taking a position that the evidence might contradict.' " Id. (alteration in original) (quoting United States v. Salerno , 505 U.S. 317, 323, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992) ).
2
Our circuit and others agree that "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, ... even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." Rhone-Poulenc Rorer Inc. v. Home Indem. Co. , 32 F.3d 851, 864 (3d Cir. 1994) (emphasis added). "Attorney/client documents may be quite helpful [to an adversary's argument], but this is not a sufficient basis for abrogating the privilege." In re Burlington N., Inc. , 822 F.2d 518, 533 (5th Cir. 1987). Instead, for this type of waiver to occur, the client "must rely on privileged advice from his counsel to make his claim or defense." In re Cty. of Erie , 546 F.3d 222, 229 (2d Cir. 2008) ; accord Rhone-Poulenc , 32 F.3d at 863 (collecting cases across jurisdictions).
There are good reasons for this rule. "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." Swidler & Berlin v. United States , 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States , 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). These benefits accrue only if clients remain "free from the consequences or the apprehension" that a court might order their confidential communications involuntarily disclosed. Hunt v. Blackburn , 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888).
*562 But a privilege that gives way whenever its contents become relevant or even "highly relevant" to an opposing party's arguments cannot serve this purpose. Such a defeatable "privilege" is hardly a privilege at all. See United States v. Zingsheim , 384 F.3d 867, 871 (7th Cir. 2004) ("[W]hat a 'privilege' means is an entitlement to withhold information even if it would bear on the merits of a disputed issue."). Such a rule would also fail to protect the client's confidences when protection is needed most. Rhone-Poulenc , 32 F.3d at 864. And the rule's unpredictability would impair the client's ability to safely confide in counsel. As the Third Circuit put it:
[B]ecause the definition of what may be relevant and discoverable from those consultations may depend on the facts and circumstances of as yet unfiled litigation, the client will have no sense of whether the communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential.
Id . The Supreme Court has rejected views similar to those of Defendants for just this reason. See Swidler & Berlin , 524 U.S. at 409, 118 S.Ct. 2081 ("[A] client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or a criminal matter, let alone whether it will be of substantial importance. Balancing ex post the importance of the information ... introduces substantial uncertainty into the privilege's application. For just that reason, we have rejected use of a balancing test in defining the contours of the privilege."); Upjohn , 449 U.S. at 393, 101 S.Ct. 677 ("[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege ... is little better than no privilege at all."); cf. Jaffee v. Redmond , 518 U.S. 1, 17, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) ("Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the [psychotherapist-patient] privilege.").[7] This authority convinces us Mississippi would reject Defendants' view of the law.
3
To the extent the Mississippi Supreme Court's opinion in Jackson Medical left ambiguity on this issue, moreover, the case from which it borrowed its rule- Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co. , 249 Conn. 36, 730 A.2d 51 (1999), quoted in 836 So.2d at 773 -puts those doubts to rest. Like Itron, the Metro Life plaintiff alleged that the defendant's actions caused it to pay out otherwise-unnecessary settlements, and it sought to recover accordingly. 730 A.2d at 53-54. And like Defendants here, the other side sought discovery into the plaintiff's attorney-client communications to test whether the settlements were "reasonable." Id. at 54, 61.
Applying the rule later adopted in Jackson Medical , the Connecticut Supreme Court held that no waiver had occurred.
*563 Id. at 60-64. In doing so, it explicitly rejected the argument Defendants now advance:
Merely because the communications are relevant does not place them at issue. ... Although the plaintiff's [responsibility] to make reasonable settlements is at issue, that fact does not place the privileged documents at issue ... because the plaintiff is not relying on the privileged communications to prove that those settlements were reasonable. ...
It would be quite different if the plaintiff sought to prove reasonableness based upon the advice of counsel. ... [B]ut that is not the situation in the present case. ... [Rather,] the defendants [here] can assess whether the settlements of the [underlying] actions were reasonable by examining the facts of [those] actions-the same material that the plaintiff had available to it when making its decision-and by consulting experts, just as the plaintiff had the opportunity to do.
Id. at 61-62 (emphasis added). Defendants' proposed rule, the court explained, "would severely erode the attorney-client privilege and undermine the public policy upon which it is based." Id. at 61 ; see also itation index="65" url="https://cite.case.law/citations/?q=730%20A.2d%2051">id. at 62-63. Until the Mississippi Supreme Court says otherwise, its adoption of Metro Life represents decisive evidence that it would not find waiver based solely on Itron's complaint.
4
Defendants fall back on dicta in an out-of-circuit federal district court opinion, decided in 1975, which no reported Mississippi case has cited. The case is Hearn v. Rhay , 68 F.R.D. 574 (E.D. Wash. 1975), in which the district court held that state officers sued under 42 U.S.C. § 1983 waive attorney-client privilege by asserting qualified immunity, ion index="68" url="https://cite.case.law/citations/?q=42%20U.S.C.%20%C2%A7%201983">id. at 583 -a holding plainly incorrect under modern immunity law, see Erie , 546 F.3d at 229 ; cf. Crawford-El v. Britton , 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The district court in Hearn stated that the legal advice the officers received would be "highly probative" of their subjective intent, and that to allow them to invoke the privilege would be "manifestly unfair." 68 F.R.D. at 581 & n.5. To justify a finding of waiver under these circumstances, the district court first distilled from several unrelated cases the following "common factors":
(1) [the] assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.
Id. at 581. Then, although the district court found those factors present, ids="3709548" index="75" url="https://cite.case.law/frd/68/574/">id. , it went on to base its holding on a conceptually different balancing test, asking whether "the injury the [attorney-client] relationship would suffer from disclosure is greater than the benefit to be gained thereby," ids="3709548" index="76" url="https://cite.case.law/frd/68/574/">id. at 582. Next, the district court emphasized that "a major limitation" on its newly created "exception to the attorney-client privilege" was that a "substantial showing of merit to plaintiff's case must be made" before the exception could apply. Id. That showing had been made, the district court held, because the plaintiff had already "submitted affidavits and numerous depositions" showing that the defendant officer "harbored ill feelings toward plaintiff and that he persisted in his allegedly illegal conduct toward plaintiff after being put on notice by the attorney general that such conduct violated plaintiff's *564 constitutional rights." Id. (This conclusion casts some doubt on whether the attorney-client communications were "vital" to the plaintiff's case.) Finally, the district court concluded that, in the specific case before it, "the need for confidentiality must give way to plaintiff's need to have access to his proof." Id. at 583.
The meaning of this " Hearn test" is in the eye of the beholder. Some courts have read Hearn to require the client's affirmative reliance on privileged communications (in line with Jackson Medical ). E.g. , Seneca Ins. Co. v. W. Claims, Inc. , 774 F.3d 1272, 1276-78 (10th Cir. 2014) ; Sedco , 683 F.2d at 1206. Others have read it to require that there be no other form of evidence, even indirect evidence, about the contested issue (in which case the client's reliance on privileged material seems inevitable). E.g. , Frontier Ref., Inc. v. Gorman-Rupp Co. , 136 F.3d 695, 701-02 (10th Cir. 1998); United States v. Amlani , 169 F.3d 1189, 1195-96 (9th Cir. 1999) ; Zenith Radio Corp. v. United States , 764 F.2d 1577, 1580 (Fed. Cir. 1985) ; Republic Ins. Co. v. Davis , 856 S.W.2d 158, 163 & n.10 (Tex. 1993). And still others have read it to require that the opposing party demonstrate material prejudice from having the documents withheld. E.g. , Home Indem. Co. v. Lane Powell Moss & Miller , 43 F.3d 1322, 1326 (9th Cir. 1995). But see Swidler & Berlin , 524 U.S. at 409, 118 S.Ct. 2081 (refusing to make the attorney-client privilege dependent on "[b]alancing ex post the importance of the information"); Ross v. City of Memphis , 423 F.3d 596, 604 n.4 (6th Cir. 2005) (deeming Swidler & Berlin "fatal" to Hearn 's logic).
Here, Defendants ask us to apply an interpretation of Hearn that would require only that the privileged material have high relevance to case. But as discussed above, that view has no basis in Mississippi law, contradicts prevailing notions of waiver, and would effectively nullify the privilege. Nothing in Hearn persuades us that the Mississippi Supreme Court would expand Jackson Medical to embrace such a rule.
Defendants contend that we adopted their take on Hearn for federal-law cases when we decided Conkling v. Turner , 883 F.2d 431, 434 (5th Cir. 1989). But Conkling cited Hearn only for the proposition that "the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.' " Id. (alteration in original) (quoting 68 F.R.D. at 581 ). That is not an endorsement of Defendants' broad reading of Hearn , which we have already rejected as a matter of federal law. See United States v. Newell , 315 F.3d 510, 525 (5th Cir. 2002) (raising a good-faith defense does not effect waiver when there is no assertion of reliance on the advice of counsel); cf. Burlington , 822 F.2d at 533 (defendant's assertion that its prior litigation conduct had a subjective, good-faith basis does not constitute waiver unless the defendant's argument "explicitly relies" on the existence or absence of privileged communications).
Indeed, Conkling is on all fours with Mississippi's Jackson Medical : both allowed discovery into attorney-client communications only after the plaintiff relied on those communications in attempting to toll a statute of limitations. See 883 F.2d at 434 ; 836 So.2d at 773. Conkling nowhere suggests that relevance or high relevance alone gives rise to waiver, and it certainly does not suggest as much under Mississippi law. Rather, we think Conkling 's reference to "manifest[ ] unfair[ness]" refers only to the type of unfairness that results when a party invokes privileged communications while denying its adversary access *565 to the same. See Erie , 546 F.3d at 229. That is what it means to use privilege as both "sword" and "shield," see Jackson Med. , 836 So.2d at 773, and that is the type of unfairness no one contends is present here.
C
Even accepting for the sake of argument that the privilege takes flight whenever privileged communications become "highly relevant" to an adversary's defense-which, we emphasize, it does not-Defendants still fail to show how Itron's privileged communications meet that standard.[8]
1
Defendants' primary theory of relevance apparently concerns whether Itron took reasonable steps to mitigate its damages. According to Itron's complaint, Defendants' negligent misrepresentations caused Itron to become liable to Consert, necessitating the Consert litigation which Itron eventually settled. There is thus a colorable argument that, under ordinary tort principles, Itron cannot recover the cost of the settlement as damages to the extent Defendants show the settlement to have been unreasonable. See Rolison v. Fryar , 204 So.3d 725, 736 (Miss. 2016) ("An injured party has a duty to take reasonable steps to mitigate damages."); see also Wall v. Swilley , 562 So.2d 1252, 1258 (Miss. 1990) (in Mississippi, failure to mitigate "is an affirmative defense" defendants must plead and prove).
But this does not render the opinions of Itron's counsel "highly relevant." Instead, "[t]he reasonableness of the settlement ... [must] be examined under an objective standard." Metro. Life , 730 A.2d at 61 & n.21 (collecting cases across jurisdictions), cited in Jackson Med. , 836 So.2d at 773 ; see also Restatement (Second) of Torts §§ 298, 918 cmt. c (reasonableness of mitigation efforts determined from the perspective of "a reasonable man in [the plaintiff's] position"). The advice Itron actually received from its attorneys is therefore beside the point; what matters is whether an objective justification existed for Itron's decision. Cf. Erie , 546 F.3d at 229 ("This is an objective, not a subjective, test, and reliance upon advice of counsel therefore cannot be used to support [it]." (discussing qualified immunity) ). And the existence vel non of an objective justification can be ascertained from the facts of which Itron's officers were aware (which are not themselves privileged)[9] combined with objective legal analysis from experts (like those the parties have designated).See Metro. Life , 730 A.2d at 62 ; see also, e.g. , Frontier Ref. , 136 F.3d at 701-02 (attorney-client communications not "vital" to prove reasonableness of settlement because the defendant "was free to inquire of [expert witnesses and the plaintiff's] employees or representatives to discern [the plaintiff's] reasons for settling"); Home Indem. Co. , 43 F.3d at 1326 (attorney-client communications not "vital" to prove plaintiffs' unwillingness to settle, in light of plaintiffs' settlement offer); Zenith Radio , 764 F.2d at 1580 (attorney-client communications not "vital" to a failure-to-mitigate defense turning on a legal question of contract interpretation);
*566 S. Cal. Gas Co. v. Pub. Utils. Com. , 50 Cal.3d 31, 265 Cal.Rptr. 801, 784 P.2d 1373, 1380 (1990) ("Although some legal analysis ... will be necessary ... to assess the reasonableness of the [client's conduct], ... [t]he issue is an objective one which does not depend on a particular attorney's analysis, but upon the terms of the contract itself and surrounding factual circumstances."). Itron's privileged communications are pertinent to this inquiry only in the sense that they might give Defendants a head start on their legal research. The subjective opinions of Itron's attorneys are irrelevant.
2
Defendants similarly claim they must see Itron's privileged communications to know "whether Itron's settlement damages are attributable to [Defendants], a third party, or Itron itself." Although Defendants' argument is not entirely clear, they apparently seek to uncover that Itron followed unreasonable advice from its law firm (Gibson Dunn), which might arguably relieve Defendants of liability as a superseding cause. See, e.g. , Wal-Mart Stores, Inc. v. Johnson , 807 So.2d 382, 387-88 (Miss. 2001) (unforeseeable acts of third parties can break causal chain). But see also Dan B. Dobbs et al., The Law of Torts § 211 (2d ed. updated June 2017) ("[B]ecause negligence of others is often readily foreseeable, intervening negligent acts can seldom properly count as superseding causes."). Or perhaps Defendants seek to uncover that Itron's own negligence is at fault, in which case Defendants could conceivably avail themselves of a comparative negligence defense. See Wal-Mart , 807 So.2d at 388.
Either way, the argument fails for at least the reasons just discussed: Both potential theories turn on whether Itron engaged in a course of action that was objectively reasonable. And as discussed above, the objective reasonableness of Itron's conduct should be apparent from the facts known to Itron at the time (which again, are not privileged) coupled with objective legal analysis. See, e.g. , Frontier Ref. , 136 F.3d at 701-02 ; Home Indem. Co. , 43 F.3d at 1326 ; Zenith Radio Corp. , 764 F.2d at 1580 ; Metro. Life , 730 A.2d at 62 ; S. Cal. Gas Co. , 265 Cal.Rptr. 801, 784 P.2d at 1380. On Defendants' logic, moreover, any tort plaintiff would waive privilege by filing suit, as there is always a (hypothetical) possibility that imperfect advice from counsel unreasonably exacerbated or failed to staunch the injury. That is plainly not the law. Cf. Erie , 546 F.3d at 229. These duplicative theories do not establish a "vital" need for waiver, either.
3
Finally, Defendants assert without citation that Itron's privileged communications are relevant to Defendants' "voluntary payment" defense, which they have not elaborated to us. Generally speaking, Mississippi's "voluntary payment" doctrine holds that "a voluntary payment can not be recovered back." McDaniel Bros. Const. Co. v. Burk-Hallman Co. , 253 Miss. 417, 175 So.2d 603, 605 (1965). But the contours of the doctrine are not always clear, Genesis Ins. Co. v. Wausau Ins. Cos. , 343 F.3d 733, 738 (5th Cir. 2003), and it does not obviously apply to situations like the case at hand, see Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co. , 99 So.3d 142, 151 (Miss. 2012) (interpreting the doctrine in light of "the law and public policy favor[ing] the settlement of disputes"); see also Liberty Mut. Ins. Co. v. Holloway , 556 Fed.Appx. 299, 305 n.15 (5th Cir. 2014) ("The volunteer rule does not apply to this payment because the insurers' payment was in settlement of a hotly contested litigation."). Defendants' failure to brief this issue makes it impossible for us to address. See *567 United States v. Scroggins , 599 F.3d 433, 446-47 (5th Cir. 2010).
Regardless, the only explanation we have unearthed from the record regarding Defendants' putative voluntary payment defense is their argument that the Consert settlement was not "voluntary" because Itron had "no legal obligation to make" it.[10] Specifically, Defendants argued to the district court that "the Consert Agreement was void, unenforceable and should have been reformed to remove any payment obligation on behalf of Itron," and that "Itron had numerous valid defenses." But, even if this argument is legally available to Defendants, these are the types of objective, legal questions on which the opinions of Itron's attorneys have no bearing. As above, the legal reasonableness of Itron's decision turns on the underlying facts and the application of objective law. See, e.g. , Frontier Ref. , 136 F.3d at 701-02 ; Home Indem. Co. , 43 F.3d at 1326 ; Zenith Radio Corp. , 764 F.2d at 1580 ; Metro. Life , 730 A.2d at 62 ; S. Cal. Gas Co. , 265 Cal.Rptr. 801, 784 P.2d at 1380. It does not put the subjective views of Itron's attorneys "at issue."[11]
For all these reasons, the order compelling disclosure constituted clear legal error.
III
Not all errors are correctable on mandamus. This one, however, is. We ask (1) whether the petitioner has demonstrated that it has "no other adequate means to attain the relief [it] desires"; (2) whether the petitioner's "right to issuance of the writ is clear and indisputable"; and (3) whether we, in the exercise of our discretion, are "satisfied that the writ is appropriate under the circumstances." Cheney v. U.S. Dist. Court for D.C. , 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). Although Defendants contest only the second prong, we have assured ourselves that all three are met.
A
Itron has shown the inadequacy of relief by other means. This requirement is "often ... met in cases where a petitioner claims that a district court erroneously ordered disclosure of attorney-client privileged documents." In re Kellogg Brown & Root, Inc. , 756 F.3d 754, 760-61 (D.C. Cir. 2014). "That is because (i) an interlocutory appeal is not available in attorney-client privilege cases (absent district court certification) and (ii) appeal after final judgment will come too late because the privileged communications will already have been disclosed pursuant to the district court's order." Id. ; see also, e.g. , Avantel , 343 F.3d at 317 ("[M]andamus is an appropriate means of relief if a district court errs in ordering the discovery of privileged documents, as such an order would not be *568 reviewable on appeal."); Lott , 424 F.3d at 450-51 (same); Burlington , 822 F.2d at 522-23 (same); cf. Mohawk Indus., Inc. v. Carpenter , 558 U.S. 100, 110-11, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009) (recognizing mandamus as a "potential avenue[ ] of review" for "particularly injurious or novel privilege ruling[s]"). That is precisely the nature of Itron's petition. Given that Itron exhausted every other opportunity for interlocutory review of the magistrate judge's order compelling production, including a motion to certify an interlocutory appeal under 28 U.S.C. § 1292(b), we find this first prong met.
B
So too the second prong. The "right to the issuance of the writ is necessarily clear and indisputable" if "the district court clearly abused its discretion." In re Volkswagen of Am., Inc. , 545 F.3d 304, 311 (5th Cir. 2008) (en banc). That is the case here. As explained above, the magistrate judge failed to apply Mississippi's Jackson Medical test for waiver, and misapplied even the broad, erroneous waiver test Defendants urge instead. Cf. In re Lloyd's Register N. Am., Inc. , 780 F.3d 283, 290 (5th Cir. 2015) (district court abuses discretion by "fail[ing] to address and balance the relevant principles and factors of the doctrine"); Klier v. Elf Atochem N. Am., Inc. , 658 F.3d 468, 474 (5th Cir. 2011) ("By definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard."). And as further explained above, both aspects of this error are obvious and purely legal in nature. Itron has thus shown its clear and indisputable right to the writ.
C
Finally, we are satisfied that correcting this error is a proper exercise of our discretion. We rest our decision primarily on the issue's "importance beyond the immediate case." Volkswagen , 545 F.3d at 319. Because we rarely have occasion to address the nuances of the implied waiver doctrine, district courts have applied our Conkling decision with less than perfect "consistency of outcomes." Id. Compare, e.g. , Liberty Mut. Ins. Co. v. Tedford , 644 F.Supp.2d 753, 763 (N.D. Miss. 2009) (finding waiver because the client asserted a counterclaim to which the reasonableness of the client's actions was relevant), with, e.g. , BancInsure, Inc. v. Peoples Bank of the South , No. 3:11-cv-78, 2012 WL 139208, at *2 (S.D. Miss. Jan. 18, 2012) (finding no waiver because the client "has not raised, and represents that it does not intend to raise reliance on the advice of counsel"). And if Defendants' view of the law were to proliferate, more district courts could mistakenly find waiver whenever attorney-client communications would be relevant. For example, waiver could become near automatic in any case touching on the plaintiff's knowledge or state of mind-unjustifiably eliminating the privilege in a substantial swath of cases. In light of the weighty interests served by the attorney-client privilege, we follow the other circuits who have employed mandamus to correct this precise error. See Erie , 546 F.3d at 227-30 ; Rhone-Poulenc , 32 F.3d at 861, 863-64.
We also find important the sheer magnitude of the error's effect on this particular case. Based on clear legal error, the magistrate judge ordered Itron to divulge approximately the entire universe of privileged documents from the Consert litigation-litigation that engaged around fifteen of Itron's attorneys for two-and-a-half years, right up to the eve of trial. Given that the other two mandamus factors are met, we think this qualifies as the sort of "serious error" for which the mandamus *569 "safety valve[ ]" is meant. Mohawk , 558 U.S. at 111, 130 S.Ct. 599.
IV
Itron's petition for a writ of mandamus is GRANTED. The magistrate judge's order of June 30, 2017, as affirmed by the district court on August 17, 2017, granting in part and denying in part Defendants' motion to compel, is VACATED. This case is REMANDED with instructions to re-evaluate Defendants' motion consistent with this opinion.
JAMES L. DENNIS, Circuit Judge, dissenting:
The majority opinion lays out a compelling argument that the Supreme Court of Mississippi would likely disapprove of the district court's discovery order in this case. Were this matter before us on appeal, I would probably join my colleagues. I must, however, respectfully dissent, as the petitioner here has not shown that it is entitled to a writ of mandamus.
"A writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary causes. It is not a substitute for an appeal. Only a showing of exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify granting a mandamus petition." In re Depuy Orthopaedics, Inc. , 870 F.3d 345, 350 (5th Cir. 2017) (cleaned up). The petitioner has the burden to show that its right to issuance of the writ is "clear and indisputable." Cheney v. U.S. Dist. Court for D.C. , 542 U.S. 367, 381, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (cleaned up). I cannot agree with my colleagues that Itron has made this showing.
Itron's argument in its petition for a writ of mandamus is that the district court erred by applying the Hearn standard because, Itron contends, that standard was rejected by the Supreme Court of Mississippi. In accepting Itron's position that Mississippi law "indisputably" rejects the Hearn standard, the majority opinion cites the following:
1. Jackson Medical Clinic for Women, P.A. v. Moore , 836 So.2d 767 (Miss. 2003) -which does not address the precise issue at hand and which, by Itron's own admission, contains language that seems to support application of the Hearn standard.
2. Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co. , 249 Conn. 36, 730 A.2d 51 (1999) -a Connecticut Supreme Court case cited by Jackson Medical in dicta for a different proposition.
3. Cases from other jurisdictions, especially from our sister federal circuits, whose holdings are not binding on the Supreme Court of Mississippi and do not address Mississippi law.
4. Leading treatises.
5. Policy considerations.
These authorities cannot be said to "indisputably" establish that Mississippi law has rejected the Hearn standard.
The majority opinion appears to require the defendants to establish that the district court's ruling was correct. This is evidenced by such statements as: "Defendants would have us broaden the Jackson Medical rule," Op. at 560, "Nothing in Hearn persuades us that the Mississippi Supreme Court would expand Jackson Medical ,"id. at 564, and "Defendants still fail to show how Itron's privileged communications meet that standard," id. at 565. This turns the analysis on its head. The defendants need not persuade us to "broaden the Jackson Medical rule," we need not be persuaded that the Supreme Court of Mississippi would "expand *570 Jackson Medical ," and the defendants need not show that Itron's privileged communications meets the applicable standard. Instead, it is Itron's burden to show that the district court indisputably abused its discretion by applying Hearn .[1] See Cheney , 542 U.S. at 381, 124 S.Ct. 2576. Because I believe that it failed to do so, I must respectfully dissent.

We do not reach Itron's objections as to overbreadth, vagueness, ambiguity, disproportionality, or work-product protection. Those issues may be considered afresh on remand.

Waiver resulting from voluntary disclosure of privileged material is sometimes termed "express waiver," and waiver resulting from affirmative use of or reliance on privileged material is sometimes termed "implied waiver." See generally Bittaker v. Woodford , 331 F.3d 715, 718-20 (9th Cir. 2003) (en banc). In practice, however, the two often overlap, and it is unclear that the differing labels are of material significance. Many affirmative uses of privileged information necessarily also involve voluntary disclosure of that information. E.g. , Jackson Med. , 836 So.2d at 773 (reliance on privileged communications to defeat summary judgment effected implied waiver, but that reliance could not have been accomplished without voluntarily disclosing those communications in the affidavit attached to the client's summary judgment opposition brief). Our court has described both types under the general heading of "implied waiver." E.g. , Nguyen v. Excel Corp. , 197 F.3d 200, 207 & n.19 (5th Cir. 1999).
This opinion does not concern the "anticipatory waiver" version of this rule, which finds waiver "when a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail," Smith v. Kavanaugh, Pierson & Talley , 513 So.2d 1138, 1145 (La. 1987), and which no party has invoked. Nor do we address rules governing the attorney-client privilege in specific types of legal actions, such as a client's lawsuit against an attorney, see Miss. R. Evid. 502(d)(3), which are not relevant here.

See, e.g. , Hunt v. Blackburn , 128 U.S. 464, 470-71, 9 S.Ct. 125, 32 L.Ed. 488 (1888) (client waived privilege by arguing as part of her defense that she was misled by counsel); In re Icenhower , 755 F.3d 1130, 1141 (9th Cir. 2014) ("[H]aving invoked advice of counsel in support of his position ..., [defendant] implicitly waived privilege with regard to communications on those subjects."); Seneca Ins. Co. v. W. Claims, Inc. , 774 F.3d 1272, 1276-77 (10th Cir. 2014) (plaintiff waived privilege by expressly asserting reliance on advice of counsel to demonstrate that its settlement was reasonable); United States v. Bauer , 551 F.3d 786, 790-92 (8th Cir. 2008) (defendants waived privilege by arguing "that the errors and omissions in their bankruptcy filings were the result of sloppy attorneys and poor legal advice"); United States v. Workman , 138 F.3d 1261, 1263-64 (8th Cir. 1998) (defendant waived privilege by asserting reliance on advice of counsel); Chevron Corp. v. Pennzoil Co. , 974 F.2d 1156, 1162-63 (9th Cir. 1992) (defendant waived privilege by asserting that its tax position was reasonable because it was based on the advice of counsel); Conkling v. Turner , 883 F.2d 431, 434-35 (5th Cir. 1989) (plaintiff waived privilege by asserting reliance on counsel's advice to toll the statute of limitations); United States v. Miller , 600 F.2d 498, 501-02 (5th Cir. 1979) (defendant waived privilege by asserting reliance on advice of counsel).

See, e.g. , Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc. , 552 F.3d 1033, 1043 (9th Cir. 2009) (no waiver where the client "did not actually rely on an advice-of-counsel defense"); In re Cty. of Erie , 546 F.3d 222, 229-30 (2d Cir. 2008) ; Ross v. City of Memphis , 423 F.3d 596, 604-05 & n.5 (6th Cir. 2005) (observing that "the contents of a privileged communication may be injected into litigation either by making the content of communications a factual basis of a claim or defense or by disclosing the communication itself"); United States v. Newell , 315 F.3d 510, 525 (5th Cir. 2002) (no waiver where "the record makes clear that [the client's] good faith defense was not based on advice of counsel, but rather on a simple lack of knowledge of the wrongdoing and absence of intent to participate in it"); Baker v. Gen. Motors Corp. , 209 F.3d 1051, 1055 (8th Cir. 2000) ("[Plaintiffs] would like to extend the application of at-issue waiver to a situation where a party has used witness testimony and made factual representations that were allegedly contrary to what the privileged documents will reveal. But, courts in both Michigan and Missouri have rejected the extension of at-issue waiver to this type of scenario."); U.S. Fire Ins. Co. v. Asbestospray, Inc. , 182 F.3d 201, 212 (3d Cir. 1999) (advice of counsel not placed in issue merely by client's assertion that its conduct was reasonable); Rhone-Poulenc Rorer Inc. v. Home Indem. Co. , 32 F.3d 851, 864 (3d Cir. 1994) ; In re Geothermal Res. Int'l, Inc. , 93 F.3d 648, 652-53 (9th Cir. 1996) (privilege not waived just because the client files a lawsuit to which the client's subjective intent would be relevant); Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co. , 953 F.2d 1004, 1007 (5th Cir. 1992) ("The revelation of confidential communications, not the institution of suit, determines whether a party waives the attorney-client privilege. ... No such revelation has compromised Browning's attorney-client privilege."); United States v. White , 887 F.2d 267, 270 (D.C. Cir. 1989) (Ruth Bader Ginsburg, J.) (rejecting the argument that the defendant "waived his attorney-client privilege ... by putting the government to its proof on the issue of his criminal intent" because "[a] rule thus forfeiting the privilege upon denial of mens rea would deter individuals from consulting with their lawyers to ascertain the legality of contemplated actions" and "would therefore undermine the animating purpose of the privilege"); In re Burlington N., Inc. , 822 F.2d 518, 533 (5th Cir. 1987) (no waiver because "[t]his is not a case in which a party has asserted a claim or defense that explicitly relies on the existence or absence of the very communications for which he claims a privilege"); Zenith Radio Corp. v. United States , 764 F.2d 1577, 1580 (Fed. Cir. 1985) ("A party does not automatically waive [the attorney-client] privilege[ ] ... simply by bringing suit."); Bertelsen v. Allstate Ins. Co. , 796 N.W.2d 685, 703 (S.D. 2011) ("The key factor is reliance of the client upon the advice of his attorney."); Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co. , 249 Conn. 36, 730 A.2d 51, 61 (1999) (even though reasonableness of plaintiff's settlement with a third-party was at issue, plaintiffs did not waive privilege by filing suit because they never asserted reliance on privileged communications); S. Cal. Gas Co. v. Pub. Utils. Com. , 50 Cal.3d 31, 265 Cal.Rptr. 801, 784 P.2d 1373, 1378-79 (1990) (no waiver where client never "rel[ies] on its attorneys' advice or state of mind to demonstrate that it acted reasonably"); Oil, Chem. & Atomic Workers Int'l Union v. Sinclair Oil Corp. , 748 P.2d 283, 290 (Wyo. 1987) (no waiver where defendants "did not rely on advice of counsel as a defense"); cf. Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz. , 881 F.2d 1486, 1495 (9th Cir. 1989) (no exception to attorney-client privilege for relevant information unavailable by other means).

To the extent Defendants worry that the jury will assume, unprompted, that the settlement must have been reasonable because Itron must have had attorneys, Defendants are free to request a limiting instruction. See Fed. R. Evid. 105.

See, e.g. , 2 Paul R. Rice et al., Attorney-Client Privilege in the United States § 9:46 (2017-18 ed.) ("The privileged communications must be made an issue in the litigation by the client's reliance upon them to establish a claim or defense."); 81 Am. Jur. 2d, supra , § 329 ("[A] party waives the attorney-client privilege by placing the advice of counsel in issue only where the client asserts the claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication; the advice of counsel is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner; rather, the client must take an affirmative step in the litigation to place the advice of the attorney in issue."); 1 McCormick, supra , § 93 ("The cases are generally agreed that filing or defending a lawsuit does not waive the privilege. By contrast, specific reliance upon the advice either in pleading or testimony will generally be seen as waiving the privilege. [Although] [s]ome decisions have gone much further, ... [s]uch extensions seem dubious ...." (footnotes omitted) ).

The Louisiana Supreme Court has made the related point that finding waiver based on "how badly the opposing party needs the evidence" would take the privilege out of the client's hands and "subject [it] to the hazards of fortune." Smith , 513 So.2d at 1146. "[T]he continued existence of one's privilege would depend not on how one has used or abused [it], but rather on who one's adversary happens to be" and which defenses he happens to raise. Id.

Although we might not normally expound upon the district court's application of an incorrect legal standard, we do so here to further underscore the clear and serious nature of the error, justifying our use of mandamus.

See Upjohn Co. , 449 U.S. at 395, 101 S.Ct. 677 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts ....").

This argument appears in Defendants' early motion for summary judgment, which the district court denied before the instant motion to compel was filed. See Itron, Inc. v. Johnston , No. 3:15-cv-330, 2017 WL 391822, at *4-8 (S.D. Miss. Jan. 26, 2017) (holding that Liberty Mutual Insurance Co. v. Holloway and other cases precluded summary judgment for Defendants on the basis of the voluntary payment doctrine).

Even assuming the voluntary payment doctrine properly applies here and implicates Itron's subjective motivations for settling (issues of Mississippi law Defendants have not argued and that we do not reach), Itron's attorney-client communications still would not be "vital": after all, Defendants "ha[ve] access to information regarding ... [Itron's] motivations for settling through witnesses other than [Itron's] attorneys." Frontier Ref. , 136 F.3d at 701-02 ; see also Burlington , 822 F.2d at 533 (no waiver just because the client's subject motivation for its prior litigation conduct is relevant to the present suit).

The majority opinion also states that, even under Hearn and the defendants' reading of it, no waiver of Itron's privilege occurred. That is an argument that Itron, the petitioner, never made, and this court may not grant the drastic and extraordinary relief of mandamus based on arguments that it raises sua sponte. See Cheney , 542 U.S. at 381, 124 S.Ct. 2576 (the petitioner has to show a clear and indisputable right to the writ).